*O. H. Smith,* for the defendant. <span style="float:right">Harrison v. Stipp.</span>

---

---

Harrison and Others *v.* Stipp.

<span style="float:right">8b 455|<br>125 394|</span>

The sale of property on execution on a judgment in a suit on contract, must be governed by the law in force when the contract was made.

An appraisement of land on which an execution had been levied, certified by two appraisers selected by the sheriff (it not appearing that a third appraiser had been appointed and had acted), was held not to be warranted by the act of 1841. *Held,* also, that an appraisement in such case by appraisers selected by the sheriff under the act of 1843 was not good, unless it appeared that the contingency mentioned in that act had occurred.

Where a sheriff has in his hands several executions (the laws as to a sale under them being different), and the real estate levied on is divisible, it seems that he should commence with the execution first to be satisfied, and sell enough of the property under the law governing such sale to satisfy that execution; and that he should afterwards sell under the other executions in their order, according to the same rule, until all are satisfied or the property is exhausted. But if the property is not susceptible of division, the same should be sold under the execution first to be satisfied.

Suit in chancery by *A.* and *B.* against *C.* and *D.* for the sale of *D.'s* equitable interest in lot No. 10 and part of lot No. 11, with a house thereon, in *Indianapolis,* for the payment of debts. Decree ordering the property to be sold as other lands were sold under execution, or so much thereof as should be necessary, to pay the claims of *A., B.,* and *C.;* the proceeds to be applied first to the payment of *C.'s* claim. *Held,* that as the debt due *C.* was first to be paid, the property should be appraised and sold according to the law in force when that debt was contracted.

May Term, 1847.

HARRISON
v.
STIPP.

Monday, July 19.

ERROR to the *Marion* Circuit Court.

SMITH, J.—The facts of this case, so far as their statement is necessary for an understanding of the questions in controversy, are as follows:

*Philip Lawman* and *Jacob Persinger*, on the 18th of *November*, 1833, recovered a judgment in the Court of Common Pleas of the county of *Greene*, *Ohio*, for 365 dollars and 23 cents, against *George W. Stipp;* and upon a transcript from the record in that Court, they obtained a judgment in their favour against *Stipp* in the *Marion* Circuit Court at the *April* term, 1844, for 583 dollars and 3 cents. *Persinger* had also obtained a judgment against *Stipp* for 384 dollars and 82 cents, in the *Marion* Circuit Court, in *April*, 1838, which was revived by *scire facias* at the *April* term, 1844. Executions were issued upon both these judgments and returned *nulla bona*.

In *July*, 1839, *Stipp* purchased of *Nicholas M'Carty* lot No. 10 and a part of lot No. 11, in *Indianapolis*, receiving a bond for a deed on payment of the purchase-money. *Stipp* took possession of the lots and made valuable improvements. After he had erected a house upon the lots, he assigned the title-bond held by him to *Alfred Harrison*, to secure the repayment of advances made by the latter to enable *Stipp* to pay the purchase-money due *M'Carty*, amounting to 1,200 dollars. In *November*, 1841, *Harrison*, with the consent of *Stipp*, procured a deed for the lots from *M'Carty* to be made to himself, agreeing to hold the deed as a security for the advances he had already made, and such as he should afterwards think proper to make, on that security. He continued to make advances up to the 6th of *November*, 1843, when his whole debt amounted to 2,075 dollars and 20 cents, for which sum, he, on that day, obtained a judgment in the *Marion* Circuit Court.

On the 20th of *June*, 1844, *Lawman* and *Persinger* filed their joint bill in the *Marion* Circuit Court against *Stipp* and *Harrison*, stating the above facts and praying a sale of the property so held in trust by *Harrison* to pay their debts. *Harrison* answered but *Stipp* did not appear. At the *November* term, 1844, the Court rendered a decree ordering the sale of the premises "as other lands are sold under execu-

tion," or so much thereof as should be necessary, to pay the claims of *Harrison, Lawman,* and *Persinger,* the proceeds to be applied first to the payment of *Harrison's* claim.

A copy of the decree was placed in the hands of the sheriff to be executed, who, at the *July* term of the Circuit Court, made a return that he had caused the property to be appraised and had sold it to *Alfred Harrison* for 2,500 dollars, being half the appraised value. The certificate of the appraisers returned by the sheriff as a part of his proceedings, he being required by the statute to return the certificate, is as follows: "Being called upon by *A. W. Russell,* sheriff of *Marion* county, to value the rents and profits for seven years, and at the same time to value the fee-simple, of the following real estate, to wit, lot No. 10 and the west half of lot No. 11 in square No. 75 in the town of *Indianapolis,* together with all the buildings on said premises, taken in execution as the property of *George W. Stipp* at the suit of *A. Harrison* and others, therefore we, the undersigned appraisers, do solemnly swear, that we believe the rents and profits for seven years, of the above property, are worth 1,700 dollars, and that the fee-simple of said real estate is worth 5,000 dollars, and the same is a fair price for the same at this time, to the best of our judgments. Sworn to and subscribed before me, *A. W. Russell,* sheriff of *Marion* county as aforesaid, this 23d day of *April,* 1845. *E. J. Peck, J. L. Mothershead.* Test, *A. W. Russell,* Sh. M. C."

Upon this return being made, a motion was made by the complainants and *Harrison* in the Circuit Court to have the sale confirmed; and at the same time a counter motion was made by *Stipp* to have the sale set aside on the ground of illegality in the execution of the decree by the sheriff. The Court sustained the latter motion and ordered the sale to be set aside, which is the error complained of.

The legality of the proceedings up to and including the rendition of the decree is not contested, and the only question now to be decided is, whether the Circuit Court did or did not err in setting aside the sale by the sheriff.

It is objected to the appraisement that it is void, because it does not state the value of the property " free from all incumbrances," according to the form prescribed by the act of

May Term,
1847.

HARRISON
v.
STIPP.

1842. The plaintiffs in error contend, however, that the sale was rightfully made under the execution law of 1841, that law being in force at the time *Harrison's* debt was contracted. The act of 1841 did not require the appraisement to be made with reference to incumbrances. Since the decisions in the cases of *Bronson* v. *Kinzie*, 1 Howard, U. S., 311, and *M'Cracken* v. *Hayward*, 2 *id.* 608, it is regarded as settled, that sales of property under execution must be made pursuant to the laws in force at the time the debts were contracted, notwithstanding the laws should be different at the dates of the sales. The authority of those decisions has been heretofore recognized by this Court. The sheriff is therefore required to sell property levied upon by him, under the law of the contract, if he has satisfactory evidence of the date on which the contract was entered into. But by a reference to the acts of 1841, 1842, and 1843, it will be found that the appraisement was not made in accordance with the laws in force, either at the date of the sale or at the time the contract is alleged to have been made.

The act of 1841 provided that the appraisement should be made by *three* disinterested freeholders to be selected by the sheriff. The act of 1842 authorized the sheriff to select *two* disinterested householders for appraisers, who should choose a third in case of disagreement. The act of 1843 required for the purpose of appraisement that the plaintiff should select one appraiser and the defendant another, who should proceed to make an appraisement in the manner prescribed by the act of 1842; in case of disagreement the two appraisers thus selected were to appoint a third, but the sheriff was not authorized to select appraisers unless one or both the parties should refuse or neglect to do so, or unless the persons chosen by them should refuse to serve.

The appraisement in the present case was made by two appraisers only selected by the sheriff. To render it a valid appraisement under the act of 1841, which required the selection of three, it should have appeared that three had been appointed and that that number had acted. If it had so appeared, an appraisement made by the majority might have been sufficient, but in this instance there is no reason to suppose that more than two had been appointed. To constitute

a good appraisement under the act of 1843, which was in force at the time of the sale, as it was made by two appraisers selected by the sheriff, who had no authority to select them except upon the happening of a contingency, it should have appeared by the return that such a contingency had occurred. Under similar statutory provisions, both these points have been so decided in *Massachusetts*, and, we think, correctly. 2 Mass. R. 154.—8 *id*. 284.—14 *id*. 143.—17 *id*. 299.— 2 Pick. 331.—12 *id*. 47.

But it is also contended, that as one of the debts at least, for the payment of which the property was sold, was contracted before the passage of the appraisement and valuation laws, no appraisement was necessary. This leads us to the consideration of what is, unquestionably, the most difficult and embarrassing question in the case. By the terms of the decree, the sheriff was required to sell the property for the payment of three distinct debts due to different parties, and each governed by different laws in force at the time the contracts were severally made. He was required to do, by the decree, precisely what he would have been required to do if three executions had come to his hands, upon judgments at law, for the collection of the same debts. He should, therefore, have been governed by such rules as would have been applicable if such had been the case. It is true, *Persinger* and *Lawman* were the complainants in the bill originally filed, and the decree was professedly rendered in their favour and against *Harrison* as one of the defendants; but the decree, the correctness of which is not now in question, places him also on the footing of a complainant and orders the property to be sold, not subject to his debt, but for the payment of it first in order from the proceeds. It does not appear at what exact date the title-bond was assigned and the first advancements made by *Harrison*, nor is it, perhaps, material that it should so appear. The contract under which the latter claimed to hold the property as a security, must be considered as bearing date in *November*, 1841, when the agreement between him and *Stipp* was made and when the deed was executed to him by *M'Carty*. Whatever advances were made before or after must be regarded as having been made in pursuance of the contract of that date, as it clearly appears from

the record that such was the intention of the parties at the time. At the date of this contract then, *November*, 1841, real estate could not be sold under execution for less than one-half its appraised value, but at the date of *Persinger's* judgment, *April*, 1838, no appraisement or valuation laws were in force.

When a sheriff has several executions in his hands, governed by different laws as to the terms upon which the property levied upon is required to be sold, it is evident that he cannot possibly comply, at a single sale, with the requisitions of each execution. If the property is divisible, however, he may sell under each a sufficient portion for its satisfaction. It would seem that in such case the obvious course, and the only one by which the law can be complied with, is to commence with the execution in his hands first to be satisfied, and sell enough under the law of the contract by which it is governed to make the sum demanded by it; and then to sell under the others in their order, in the same way, until all are satisfied or the property is exhausted. But when the property is not susceptible of a division this cannot be done. How then shall the sheriff proceed? It may readily be conceived, that a conflict of rights may here take place which it will be extremely difficult, if not impossible, to accommodate, so as to do equal justice to all the parties. The execution upon the oldest judgment may be for a small amount to be made by the *sale of the* property at its full appraised value, and the next in order may be for a large amount and more nearly equivalent to the value of the premises, to be made by a sale without appraisement. The creditor in whose favour the last execution issued, may say he should not be impeded in the collection of his debt by the necessity of a sale at the full appraised value under the other, and the debtor may reply, that although he contracted to pay one debt by the sale of his property without conditions, he did not so contract to pay other debts. The same difficulty may occur when the property is in fact divisible, but not into a sufficient number of portions to satisfy all the executions in the hands of the sheriff.

It is said that as, in such cases, the sale is regarded as having been made upon all the executions, and the title of the purchaser relates back to the date of the oldest judgment,

such sale should be held good if made according to the law of the contract governing any one of them. But this would enable the officer to act oppressively or with favouritism at his pleasure, and we do not perceive that any nearer approach would thus be made to a compliance with the law. This principle has in reality nothing to do with the question under consideration. It is as to the manner of making the sale in conformity with the several contracts of the creditors with the debtor. The law requires the sale to be so made, and it should be complied with as nearly as possible, paying due regard to the reciprocal rights of all the parties.

Upon the whole then, we think the sheriff should have some rule for his governance, and we cannot perceive any good reason why the rule should not be the same whether the property be susceptible of a division or not. Without deciding what course might or might not be adopted in cases differing materially from the present one, we think the sheriff should ordinarily proceed to sell first upon the execution upon the oldest judgment, or for the payment of the debt first to be satisfied out of the proceeds. He would thus comply with the law as far as it would be in his power to do so, and the least injury would be likely to result to the rights of the various parties.

In this case, the debt of *Harrison* being the oldest lien upon the premises, and being first to be paid by the sale directed by the decree to be made " as other lands are sold under execution," the course adopted by the sheriff in causing an appraisement to be made, and in offering the property for sale for not less than one-half its appraised value, as prescribed by the laws of 1841, was correct. But as the appraisement was not legally made, the sale was for that reason properly set aside; *Harrison*, the purchaser, standing in the relation of an execution-creditor, and being consequently affected with notice of the irregularity.

The rights of the parties may be affected by the mode of appraisement, or the manner in which the appraisers are to be selected, as well as by the terms on which the property is required to be sold. It was necessary, therefore, to carry out the law of the contract, that the appraisement should have been made in conformity with the same law under which the

sale was to take place, and not according to the mode pre-scribed by the laws in force at the date of the sale. The she-riff should have selected three appraisers as required by the act of 1841.

*Per Curiam.*—The decree is affirmed with costs.

*W. Quarles, J. H. Bradley, J. Morrison,* and *S. Major,* for the plaintiffs.

*O. H. Smith,* for the defendant.