*A. J. Boone*, for the state.

---

HAMILTON, Auditor of *Marion* county, *v.* THE STATE, on the Relation of BATES.

By the statute of 1852, the members of the state board of equalization were appointed to discharge a public duty, and there being no provision that a less number than the whole should proceed in the business, the district delegates and the state auditor who convened at *Indianapolis* as such board, had no authority to act in the absence of the delegate from the sixth district.

Were the order of said board increasing the appraisement of land in *Marion* county otherwise valid, it would be null and void, because it was made in the absence of one of the members of the board.

Said board is a mere creature of the statute, and has no authority except what the statute confers; and the board being only authorized by the statute to equalize the appraisement of land *between the several congressional districts*, the order of the board for equalizing the appraisement between

*the several counties* of the sixth congressional district, had the board been legally convened, would have been null and void on that account.

The writ of *mandamus* is the proper remedy for the state to compel an officer to perform a public duty.

A *mandamus* to compel a county auditor to issue his duplicate for the tax on real property without adding to the valuation thereof an illegal *per cent.*, is a case for the enforcement not of a private but a public duty.

The relator, in an application for a *mandamus* for the enforcement of a public right, need not have a special interest in the matter, nor be a public officer, but any private citizen, having a general interest in the matter, may be a relator.

APPEAL from the *Marion* Circuit Court.

BLACKFORD, J.—An alternative *mandamus* in the name of *The State*, on the relation of *Hervey Bates*, was issued by the *Marion* Circuit Court on the 21st of *July*, 1852. The writ was issued on the affidavit of the relator, and was directed to *John W. Hamilton*, auditor of said county.

The relator's affidavit, which is recited in the writ, states, *inter alia*, that, on the 5th of *July*, 1852, the auditor of state and the delegates from the several congressional districts of the state (except the delegate from the sixth district), met at *Indianapolis* for the purpose of equalizing the valuation of the real property of each of said districts; that the sixth district is composed of the counties of *Marion, Hancock, Shelby, Johnson, Morgan,* and *Hendricks;* that such state board of equalization continued in session until the 9th of said month, and resolved that there should be an addition of fifteen *per cent.* to the real estate of said county of *Marion;* an addition of ten *per cent.* on such estate in said *Shelby* county; and an addition of five *per cent.* on such estate in said *Hancock* county; that no other action was taken by said state board as to any of the counties in said sixth district; that on the 17th of said month the auditor of state reported to said auditor of *Marion* county, the said per centage of increase to be added to the valuation of real property therein; that neither at the first, nor at any other meeting of said state board, was there any delegate present from said sixth district, though one had been regularly appointed; that said relator is a citizen and tax-payer of said

Nov. Term,
1852.

HAMILTON
v.
THE STATE.

Monday,
November 22.

Nov. Term,
1852.

Hamilton
v.
The State.

*Marion* county, and has real estate therein appraised at 49,875 dollars for the purpose of taxation the present year; that said county auditor is about to add said fifteen *per cent.* to the valuation of the land in *Marion* county, and refuses to certify the duplicate without said addition.

The writ commanded said county auditor to issue the duplicate for the tax on real property without said addition of fifteen *per cent.*, or show cause why he had not done so.

Afterwards, on the 27th of said month, said county auditor filed his return to the writ. This return states that the defendant cannot deny the facts alleged in the writ and the relator's affidavit, and admits the same to be true, but that he denies the relator's right to require him to omit the said fifteen *per cent.* reported to him by the state auditor. The return further states that the defendant, in order to have a speedy decision, expressly waives all objection to the form of remedy, and all questions of a technical character, desiring the Court to decide directly whether said fifteen *per cent.* shall or shall not be added pursuant to the state auditor's report; that he waives all other questions, and admits all facts necessary to the decision of the main question.

The cause was submitted to the Circuit Court on said affidavit, writ, and return.

The Court ordered a peremptory *mandamus* to issue, commanding the defendant, as county auditor aforesaid, to issue said duplicate without the addition of said fifteen *per cent.*, so far as related to the real estate of the relator.

The first question presented by this case is, whether the district delegates and the state auditor, who convened as aforesaid at *Indianapolis* as a state board of equalization, had any authority to act as such board in the absence of the delegate appointed for the sixth district?

The law on this subject is stated by Chancellor *Kent* in the following words: "If the authority, in a matter of mere private concern, be confided to more than one agent, it is requisite that all join in the execution of the power,

and they are jointly responsible for each other; though

the cases admit the rule to be different in a matter of public trust, or of power conferred for public purposes; and if all meet in the latter case, the act of the majority will bind." 2 Kent's Comm. 633. The Supreme Court of *New York*, in speaking on the same subject, says: " The rule seems to be well established that, in the exercise of a public as well as private authority, whether it be ministerial or judicial, *all* the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed. Where the authority is public, and the number is such as to admit of a majority, that will bind the minority, after all have duly met and conferred." *Downing* v. *Rugar*, 21 Wend. 182. The section of the statute of 1852, applicable to this part of the case, is as follows: " A state board of equalization, to consist of the delegates from the district boards mentioned in the next preceding section, together with the auditor of state, who shall be the president of the state board, shall meet at *Indianapolis* on the first *Monday* in *July* next succeeding the meetings of the said district boards; such state board shall diligently and carefully examine and compare the valuations of real property as reported to them by the chairman of the district boards, with the corrections and changes made therein by the district boards; and it shall be the duty of the said state board of equalization to equalize the appraisement of the lands in this state *between the several congressional districts*, in conformity to the standards of value and other provisions herein prescribed in relation to the county and district boards of equalization."

According to this law, the members of said state board are appointed to discharge a public duty; and there is no provision that a less number than the whole should proceed in the business. The consequence is, according to the above-cited authorities, that; were the order of said state board increasing the appraisement of the land in *Marion* county, otherwise valid, it would be null and void, because it was made in the absence of one of the mem-

bers of the board. This doctrine is not new in this Court. We have heretofore recognized it in the case of *Harrison* v. *Stipp*, 8 Blackf. 455.

The next question raised is, whether, assuming the state board to have been legally convened, the said order can be sustained? That order is for equalizing the appraisements, not between the several congressional districts, but between the several counties in one of those districts.

The duty of the state board is prescribed by the section of the statute already referred to. The following is the language: "Such state board shall diligently and carefully examine and compare the valuations of real property as reported to them by the chairmen of the district boards; and it shall be the duty of the said board of equalization to equalize the appraisements of the lands in this state *between the several congressional districts,* in conformity to the standard of value and other provisions herein prescribed in relation to the county and district boards of equalization." So, by the express terms of this law, the appraisements of the lands in the state are to be equalized by the state board *between the several congressional districts.* Each county board equalizes the appraisements between the townships of the county; each district board, the appraisements between the counties of the district; and the state board, the appraisements between the districts. The statute, however, has the following additional clause relative to the county boards, namely: "Such (county) board shall not be confined to an equalization of values between the several townships; but whenever they shall become satisfied, either from the application of owners of land who may be aggrieved by the appraisement or by other means, that the valuation of lands within any township has been unequal and inequitable, they shall have power to equalize such valuation, in conformity to the provisions of the third section." It is clear that, without this last-mentioned provision, the power of the county boards to equalize appraisements would have been confined to the appraisements between their respective townships.

Nov. Term,
1852.

HAMILTON
v.
THE STATE.

There is not, in the statute which makes it the duty of the state board to equalize the appraisements between the districts, any additional clause giving that board power to equalize any other appraisements, and, consequently, it can equalize no others. The state board, like the county and district boards, is a mere creature of the statute, and can exercise no authority but such as the statute confers. It follows, that though the state board should be considered as having been legally convened, the said order for equalizing the appraisements, not between the several congressional districts, but between the counties in one of those districts, must be null and void; the board having no authority to make such order.

The 9th section of the statute requires the state auditor, when the state board has adjourned, to give to the proper county auditors the necessary information to enable them to make the proper changes in their county lists. This, the state auditor will be enabled to do, from the orders of the state board equalizing the appraisements between the districts.

The next question is, whether a *mandamus* is the proper remedy in this case? We have no doubt as to this point. The order of the state board, as we have already shown, for the addition of fifteen *per cent.* to the valuation of the real estate in *Marion* county, is a nullity; it was, consequently, the defendant's duty, as the county auditor, to issue the tax-duplicate without said additional per centage. That duty, which was a public one, the defendant refused to perform; and the proper remedy for the state, to compel his performance of it, was by *mandamus*. 3 Blacks. Comm. 110 (1). The order aforesaid of the state board being null and void, the defendant had no discretion relative to the issuing of the duplicate. He was as much bound to issue it without the said addition of fifteen *per cent.*, as he would have been had the order for such addition not been made.

The only remaining question in the cause is, whether, admitting the writ might issue, *Bates* was a proper rela-

tor? The objection is that some officer of the state, and not a mere private person should have been the relator.

Were this a case merely for private relief, the relator would have to show some special interest in the subject-matter. But here the case is different. The defendant, who was county auditor, refused to issue the legal duplicate for the collection of the taxes, and a *mandamus* was applied for to compel him to discharge this duty of his office. It is a case for the enforcement, not of a private, but of a public right; and it is not necessary, in such cases, that the relator should have a special interest in the matter, or that he should be a public officer. That the defendant should discharge, correctly, the duties of his office, was a matter in which *Bates*, as a citizen of the county, had a general interest; and that interest was, of itself, sufficient to enable him to obtain the *mandamus* in question, and have his name inserted as the relator. There is a *New York* case in which this subject is fully discussed, and in which it is held that any private citizen may be a relator where, as in the present case, the *mandamus* is in a matter of public right. The *mandamus* in the *New York* case commanded certain commissioners of highways to open a certain public road; and it was held that, in such case, the attorney-general, or any citizen of the state, might be the relator. *The People* v. *Collins*, 19 Wend. 56.

We are unanimously of opinion, for the reasons above given, that the judgment of the Circuit Court ordering a peremptory *mandamus* to issue in this case is correct.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Morrison, S. Major, J. A. Liston*, and *J. S. Harvey*, for the appellant.

*L. Barbour, A. G. Porter, O. H. Smith*, and *S. Yandes*, for the appellee.

(1) The writ of *mandamus* will only issue when there is no other adequate and specific legal remedy.

The party applying for a *mandamus* must make out a legal right; though, if he show such legal right, and there be also a remedy in equity, that is

no answer to the application; for when the Court refuse to grant a *mandamus*, because there is another specific remedy, they mean only a specific remedy at law. *The King* v. *The Marquis of Stafford*, 3 T. R. 646.—*The People* v. *The Mayor, &c., of New York*, 10 Wend. 395. The circumstance, however, that redress might be sought in chancery should influence the Court in the exercise of its *discretion* in granting or refusing the writ. 10 Wend. 395.

The fact, also, that the party is liable to indictment and punishment for his omission to do the act, to compel a performance of which the writ is sought, constitutes no objection to the granting of the writ. *Id.*

In relation to the necessity of there being another remedy at law, specific as well as adequate, in order to deprive the party of the remedy by *mandamus*, the following is a recent case in *New York:*

Under the provisions of the act to incorporate the village of *Williamsburgh*, a jury had been summoned by two magistrates to assess the damages sustained by the opening of a street. The jury found their verdict, reduced it to writing, and signed it, but refused to deliver it to the trustees of the village until they should pay them for their services. Upon the application of the trustees, an alternative *mandamus* was issued, directed to the justices and jury, commanding them to proceed and make return of their action in the premises. The justices returned that the inquisition of the jury, after being signed, was delivered to one of the jury to be handed to the trustees. One of the jurors returned that it had been delivered to the justices, but did not state whether it had been returned to the jury, or whether it was in their possession, or not. The other eleven jurors made no return to the *mandamus*.

A motion was made to quash the *mandamus*, on the ground that the trustees had a remedy by an action of replevin against the particular juror, or by a suit against them all for damages; but the Court said:

" To deprive a party of his remedy by *mandamus*, on the ground that he has a remedy by action, the remedy by action must not only be adequate, but it must be specific. The action for damages certainly would not be specific. Whether a replevin would be, or not, depends upon circumstances. For if the inquisition could not be obtained, on the writ of replevin, then the only remedy of the trustees would be in the damages which they might recover. The only specific remedy they can have is by *mandamus*. Therefore the motion is denied." 1 Barbour's S. C. R. 34.