**Jerry L. HIGGINS, as Chairman of the Brown County Republican Central Committee; Brown County Republican Central Committee: Shelby Keaton as Brown County Clerk; Brown County Election Board: and Caryl Ann Blackwell, as the purported candidate for Judge of the Brown Circuit Court, Appellants,**

**v.**

**Robert E. HALE, Brown County Democratic Central Committee; Alice Weaver; and Keith Donaldson, Appellees.**

**No. 984 S 365.**

Supreme Court of Indiana.

April 2, 1985.

**96**

Bradley W. Skolnik, Bayh, Tabbert & Capehart, Indianapolis, for appellants.

Edward D. Lewis, Robert F. Wagner, Judith T. Kirtland, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellees.

PIVARNIK, Justice.

This cause comes to us on Petition to Transfer from the First District Court of appeals pursuant to Ind.R.App.P. 4(A)(10). Because the issues involved are of great public interest, we have granted transfer.

On July 11, 1984, Plaintiffs Robert E. Hale, Alice Weaver, Keith Donaldson, and the Brown County Democratic Central Committee filed a Verified Complaint for A Declaratory Judgment and Injunctive Relief in the Brown Circuit Court in which they requested the court to enjoin the defendants Jerry L. Higgins, Chairman of the Brown County Republican Central Committee, Shelby Keaton, Brown County Clerk, the Brown County Republican Central Committee, the Brown County Election Board and Caryl Ann Blackwell, Republican Candidate for Judge of the Brown Circuit Court from "taking any action or making any preparations for the appearance of the name of Caryl Ann Blackwell as the Republican Candidate for Office of Judge of the Brown Circuit Court on the November, 1984 general election ballot." Plaintiffs' complaint also requested the Court issue a declaratory judgment finding a vacancy existed for the Republican candidate for the office of Judge of the Brown Circuit Court and that said vacancy may not be filled.

Plaintiffs additionally filed on July 11, 1984, a Verified Motion for Temporary Restraining Order Without Notice in which they requested Defendants be enjoined

from placing the name of Caryl A. Blackwell on the general election ballot. Judge Samuel R. Rosen, Judge of the Brown Circuit Court, disqualified himself in this matter and certified it to this Court for the appointment of a special judge. The Honorable James M. Dixon, Monroe Circuit Court Judge, was appointed by this Court as Special Judge in the cause and qualified on July 17, 1984. On that date, Judge Dixon granted Plaintiffs' Verified Motion for Temporary Restraining Order Without Notice and ordered that it be served on all parties by the Clerk of the Brown Circuit Court.

Defendant Caryl A. Blackwell filed a Motion to Dismiss and Defendants Jerry Higgins and the Brown County Republican Central Committee filed an answer to the Verified Complaint for Declaratory and Injunctive Relief and Request for Specific Findings of Fact and Conclusions of Law on July 27, 1984. Also on July 27, a hearing was held to determine whether the temporary restraining order issued on July 17, should continue in effect in the form of a preliminary injunction. It was agreed by the parties at that hearing that the trial on the merits should be advanced and consolidated with the hearing on the request for preliminary injunction. Subsequently, the court heard evidence on the merits of the issue and took the case under advisement. On August 6, 1984, the trial court entered an order denying defendant Blackwell's Motion to Dismiss. The parties then stipulated to certain evidence on August 14, 1984. On August 23, 1984, defendant Blackwell again filed a Motion to Dismiss at the close of all the evidence. The Motion to Dismiss was denied by the trial court on August 24, 1984. On August 27, 1984, the court entered findings of fact, conclusions of law, and a judgment in favor of the plaintiffs. The judgment stated that all the defendants should be permanently enjoined from taking any action to place the name of Caryl Ann Blackwell on the November, 1984, general election ballot as the Republican candidate for Judge of the Brown Circuit Court.

The issues presented for review on this appeal are:

1. whether the trial court erred as a matter of law in concluding that the Brown County Republican Central Committee did not comply with Ind.Code § 3-1-11-10 (Burns Supp.1984) when it nominated Caryl A. Blackwell as the Republican candidate for Judge of the Brown Circuit Court; and

2. whether the Plaintiffs failed to demonstrate that they had standing to bring this action.

The facts are not in dispute. In the May 8, 1984, primary election no candidate sought nomination as the Republican candidate for the office of Judge of the Brown Circuit Court. Gordon K. Durnil, Chairman of the Indiana Republican State Central Committee, therefore appointed Jerry L. Higgins, Brown County Republican Chairman, as his designee to call and chair a meeting to be held in Brown County for the purpose of nominating a Republican candidate for the office of Brown Circuit Court Judge. On May 25, 1984, Jerry L. Higgins issued a written notice to all precinct committeemen and vice-committeemen advising them that a meeting would be held on June 4, 1984 for the purpose of placing a Republican candidate on the November, 1984 general election ballot for the office of Judge of the Brown Circuit Court.

At the meeting the precinct committeemen and vice-committeemen nominated Caryl Blackwell as the Republican candidate on the November, 1984 general election ballot and on June 8, 1984, Jerry Higgins certified to the Brown County Clerk that she was nominated. The Secretary of State certified on July 5, 1984, that he had received a certificate of nomination of Caryl Blackwell as the Republican party candidate for Brown Circuit Court Judge and directed her name to be placed on the ballot for the general election to be held on November 6, 1984. The Secretary of State interpreted Ind.Code § 3-1-11-10 (Burns Supp.1984) to provide that any vacancy resulting from the failure of anyone to file for an office in the primary election may be filled any time up to noon on September 1,

immediately preceeding the general election. Plaintiffs contend the vacancy on the ballot occurred May 8, 1984, the date of the primary election. Accordingly, the meeting to nominate a candidate for the office of judge had to be called pursuant to Ind.Code § 3–1–11–10 (Burns Supp.1984) within seven days of the vacancy and held within fourteen days after the vacancy. The trial court agreed with Plaintiffs' contention and found Caryl Blackwell had not been legally nominated pursuant to the statute to fill the vacancy. Accordingly, the court enjoined defendants from taking any action to place the name of Caryl A. Blackwell on the ballot for the 1984 general election. On September 25, 1984, Chief Judge Paul Buchanan of the Indiana Court of Appeals entered an order staying the judgment of the trial court pending appeal and directing that the name of Caryl Blackwell be placed on the 1984 general election ballot. This Court continued the order staying judgment of the trial court pending appeal upon transfer. On November 6, 1984, Caryl Blackwell received more votes as Republican candidate for Judge of the Brown Circuit Court than Democratic candidate Samuel Rosen.

I

Ind.Code § 3–1–11–10 (Burns Supp.1984) is entitled Vacancies—How filled—Consent of Candidate filed, and provides:

(a) This section applies to the filling of the following types of candidate vacancies when those vacancies leave a political party with no candidate for an office:

(1) Candidate vacancies that arise due to:

(A) The withdrawal of a candidate before a primary election under IC 3–1–9–9; or

(B) The death of a candidate before the thirtieth day before a primary election.

(2) Candidate vacancies that arise before noon on September 1 before a general, city, or town election due to:

(A) The death or withdrawal of a candidate; or

(B) A vacancy on a primary election ballot as described in subsection (b).

(3) Candidate vacancies that arise due to the death of a candidate after noon on September 1 and before the thirtieth day before a general, city, or town election.

(4) All candidate vacancies that arise before the thirty-sixth day before a special election.

(b) A candidate vacancy that exists on a primary election ballot:

(1) Because no person filed as a candidate for nomination for an office; or

(2) Because of the death of a candidate on or after the thirtieth day before the primary election;

may not be filled for the primary election. The resulting vacancy in the following general, city, or town election may be filled in the manner provided by this section, but such a vacancy may not be filled after noon on September 1.

(c) When a political party has no candidate for an office, the vacancy shall be filled by the political party in the following manner:

(1) Vacancies for county, township, city, and town offices shall be filled by the precinct committeemen and precinct vice committeemen who constitute the county committee established under IC 3–1–2–1.

(2) Vacancies for the office of prosecuting attorney, judge, state representative, or state senator shall be filled by the precinct committeemen and precinct vice committeemen who constitute the county committees established under IC 3–1–2–1 for all of the affected counties, districts, or circuits.

(3) Vacancies for representative in congress shall be filled by a committee consisting of the precinct committeemen whose precincts are within the congressional district.

(4) Vacancies for United States senator or any officer elected by all the voters of the state shall be filled by the state central committee established under IC 3–1–2–1.

(d) Within seven [7] days after the occurrence of a candidate vacancy covered by subsection (c)(1), (c)(2), or (c)(3), a meeting of the appropriate committee shall be called to fill the vacancy. The meeting shall be called and chaired by:

(1) The county chairman, in the case of a vacancy covered by subsection (c)(1); or

(2) The chairman of the state central committee, in the case of a vacancy covered by subsection (c)(2) or (c)(3).

The meeting must be held within fourteen [14] days after the occurrence of the candidate vacancy.

(e) The call for a meeting under subsection (d) must:

(1) Be in writing;

(2) State the name of the chairman of the meeting;

(3) State the purpose of the meeting;

(4) State the date, time, and place of the meeting; and

(5) Be sent by first class mail, at least seven [7] days before the meeting, to all persons eligible to participate in the meeting.

To resolve the issue, we must interpret the Legislature's intent.

■ The vacancy on the general election ballot resulting from the primary election ballot vacancy and purportedly filled by the Brown County Republican Central Committee is in dispute. The issue both parties seek to resolve is when does a vacancy on the general election ballot occur when there was a vacancy on the primary ballot. According to Appellants, the trial court erred by finding the vacancy occurred the day of the primary election. Appellants claim the Legislature established a detailed procedure in Ind.Code § 3–1–9–17 (Burns Supp.1984) to determine the eligibility of primary election winners for placement on the general election ballot. This statute requires certain actions be taken by the appropriate officials, such as the certification of election results, before a candidate may be deemed eligible to run for office in the general election. Appellants contend these administrative procedures are neces-

sary to certify the results of a primary election vote, and that they must be completed to determine that a vacancy exists on the primary election ballot. In other words, a vacancy does not exist until all of these procedures have been completed. However, we agree with Appellees and the trial court that completion of these procedures is not necessary to determine a general election ballot vacancy which has resulted from the vacancy on the primary election ballot. The existence of a vacancy is apparent and real on the date of the primary election. No procedure is needed to determine a general election ballot vacancy has resulted.

The Legislature speaks of a vacancy that arises, exists, occurs and results. These are all words with ordinary meanings which refer to an event and must be given their ordinary, everyday meaning unless there is some indication in the statute that a specialized or technical meaning is intended. *Chicago & Calumet District Transit Co., Inc. v. Mueller,* (1938) 213 Ind. 530, 12 N.E.2d 247. There is no language in Ind. Code § 3–1–11–10 requiring the vote tabulation and certification process be completed before a general election ballot vacancy can arise, occur, exist, or result. Therefore, there is no inference that the Legislature intended to incorporate the tabulation and certification process of Ind.Code § 3–1–9–17 within Ind.Code § 3–1–11–10. Accordingly, the trial court properly found the vacancy existed on the date of the primary election.

Appellants further contend the trial court erred by applying the fourteen day deadline to the nomination process rather than applying the September 1, deadline also appearing in the statute. Appellants claim the statute is ambiguous at this point because only one deadline can be used and the trial court opted for the wrong deadline when resolving this apparent ambiguity. Appellees conversely posit the statute can be read reasonably to give meaning to all portions of it and the court is not required to disregard either deadline. Ind.Code § 3–1–11–10(d) refers to the filling of va-

cancies in the manner provided *in this section.* Sub-part (d) of the statute sets out the process at issue in this matter. Not all vacancies are to be filled by that process as is apparent from its very language. Sub-part (d) provides a process for filling three of the four types of vacancies which are listed in sub-part (c) of the statute. The fourth type of vacancy, those identified in sub-part (c)(4) of the statute as being of a state-wide nature, are not included within the language of sub-part (d) and its process and time frame for filling a vacancy. Thus, it appears that county or municipal types of offices set forth in sub-part (c)(1), (c)(2), and (c)(3) are to be filled within the fourteen day limit identified in sub-part (d). Vacancies existing with respect to state-wide offices are excluded and therefore fall within the September 1 provision of sub-part (b) of the statute.

This distinction is apparent in a reading of the statute and appears to be due to the fact that a larger geographical area will require more time and effort to coordinate the process required to fill the vacancy. This reading of the statute would give meaning to all portions of the statute. *See Combs v. Cook,* (1958) 238 Ind. 392, 151 N.E.2d 144. However, as Appellees point out, if Appellants' contention is true, that the two deadlines are mutually exclusive and one must be disregarded, then this Court must decide which deadline is to be disregarded. The most recent amendment to the election code adopted the 14 day deadline applied by the trial court. This provision was brought into the statute in 1983. For many years prior the September 1 deadline for filling vacancies had been in effect. Thus, it appears the Legislature, being aware of the existence of the September deadline, thought it inadequate and amended the law to provide for a more timely nomination. This interpretation gives meaning to the Legislature's intention for changing the process. The Court must recognize the significance of this latest amendment, which purports to change an existing deadline, to give effect to the Legislature's intent. Since it appears the Legislature's intention was to change the

September 1 deadline with regard to certain types of vacancies on the general election ballot, that intention should be respected and implemented by this Court as it was by the trial court. *Metropolitan School District of Martinsville v. Mason,* (1983) Ind.App., 451 N.E.2d 349, *trans. denied.*

Furthermore, a general rule of statutory construction requires that courts implement the specific provisions of the statute over those of a general nature. *Houtchens v. Lane,* (1965) 246 Ind. 540, 206 N.E.2d 131, *reh. denied.* Ind.Code § 3–1–11–10(d) is more specific than the general reference in sub-part (b) to the filling of vacancies no later than September 1, in any event. Therefore, if the Court must choose between deadlines, the legislative intent would be better served by the implementation of the specific provision of sub-part (d) of the statute.

Appellants suggest the 14 day deadline should not be applied because the Legislature's use of the word "may" authorizes the total disregard of the process for filling vacancies in sub-part (d). We agree with Appellees that the Legislature's intention in sub-part (b) cannot be interpreted to suggest to the citizens of the state that they may choose which procedure to use. A more realistic and logical interpretation of the word "may" is to recognize the permissive reference to the option to fill the vacancy or not. Ind.Code § 3–1–11–10(b) does not require the filling of a vacancy if the party does not wish to fill it. It requires the implementation of the process in sub-part (d) if the vacancy is to be filled.

The trial court properly found the provisions of the statute required the meeting to be called for the filling of the vacancy for Brown County Circuit Court judge within the fourteen-day deadline period of the statute. Since the nomination was not made within that period it was void and of no effect. Appellants also claimed the trial court erred by failing to give proper weight to the interpretation of the statute in question expressed by the Secretary of State. The Secretary of State interpreted the statute to permit filling of the vacancy by noon

of September 1. The trial court, in its findings of fact and conclusions of law, specifically recognized the Secretary of State's interpretation of this statute. Further, as the appellant acknowledges, an erroneous interpretation by the Secretary of State is not entitled to great weight. The trial court simply found the interpretation to be incorrect and therefore not persuasive. It was correct in this finding. *Aaron v. Review Board of Indiana Employment Security Division,* (1981) Ind. App., 416 N.E.2d 125, trans. denied; *State ex rel Middleton v. Scott Circuit Court,* (1938) 214 Ind. 643, 17 N.E.2d 464; *Board of Trustees v. Baughman,* (1983) Ind.App., 450 N.E.2d 95.

## II

■ Appellants claim Appellees lack the requisite standing to bring this case. Appellants are correct in their claim that in order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue. However, Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court so held in *Zoercher v. Agler,* (1930) 202 Ind. 214, 172 N.E. 186, *reh. denied* 202 Ind. 214, 172 N.E. 907, and *Hamilton v. State ex rel. Bates,* (1852) 3 Ind. 452. This Court held in those cases that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official.

*Hamilton* concerned a meeting of the Auditor of State and the delegates from several congressional districts of the State meeting in Indianapolis for the purpose of equalizing the valuation of the real property of each of the districts. This Court held that the relator need not have a special interest in the matter nor be a public officer, but any private citizen having a general interest in the matter may be a relator. *Zoercher* involved taxpayers of the city prosecuting an action for declaratory judgment to determine the validity of the law authorizing the State Tax Board to review municipal tax levies. This Court found the taxpayers had standing as they were suing for determination and establishment of public rights and had a substantial interest in the subject matter in controversy.

Appellees contend there is no more public right than the right to vote and the accompanying right to ensure that the election process is administered in a manner consistent with the laws of this State. Therefore, even if Appellees could not show a special interest, they had standing to file the lawsuit at issue in this matter. We note the Legislature has recognized this public right by providing in the case of election contests that the results of a primary election may be contested by any person who was a candidate at such election for such office or such nomination or by *any elector* who was entitled to vote for such person. Ind.Code § 3-1-28-1 (Burns Supp.1984)

Appellees further assert that they do have a special interest in the outcome of this lawsuit that sufficiently establishes standing. Each of the appellees is a participant in the political process in Brown County. The individual Appellees, Keith Donaldson and Alice Weaver, are both residents of Brown County and registered voters, the former a Democrat and the latter a Republican. Robert A. Hale is the Chairman of the Brown County Democratic Central Committee. Hale and the Brown County Democratic Central Committee are the democratic counterparts of two of the defendants, Higgins and the Brown County Republican Central Committee. Their filling of vacancies in the future will be controlled by this decision. As such, they are vitally interested in the outcome of this lawsuit and the interpretation which this Court places on Ind.Code § 3-1-11-10.

■ Appellees had standing under both approaches establishing standing. They were suing for the determination of public

rights and had a substantial interest in the subject matter. They had the right to ensure that the candidate appearing on the ballot was lawfully placed there so that votes could be cast for a candidate eligible to take office. Likewise, they had a special interest in the outcome of this lawsuit as their future filling of vacancies will be governed by this decision. Therefore, the trial court was correct in finding Appellees had standing to bring this action.

The order this Court issued staying the judgment of the trial court pending appeal upon transfer is hereby ordered dissolved. The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.