SHEPARD, Chief Justice.
This case comes before us only after deliberative actions taken by the executive branch, the Indiana Recount Commission, the General Assembly, the court system, and — most significantly — almost two million Indiana voters who cast their ballots for Secretary of State in November 2010. The Indiana Democratic Party sought to have the winner in the election, Republican Charlie White, declared ineligible to assume office because he had not been registered to vote at the address at which he resided on July 15, 2010, the deadline for certifying candidates for state office. The *483 Indiana Recount Commission dismissed this petition and later denied it, but the Marion Circuit Court reversed.
The appeal before us today does not decide any questions flowing from White’s subsequent criminal convictions, but rather whether the Democratic Party’s petition was a basis for barring his taking office after winning the election. We hold it was not.
Facts and Procedural History
Charlie White married Nicole Mills in September 1998. They resided, together with their child, in the town of Fishers, in Precinct 12, Delaware Township, at a home on Broad Leaf Lane. White served as a member of the Fishers Town Council from a district that included the Broad Leaf house. White voted in the 2004 and 2006 primary and general elections in this precinct.
White and Mills divorced in December 2006, after which Mills continued to live at the Broad Leaf house. White began renting an apartment in Precinct 14 of Delaware Township, on Pintail Drive. In January 2007, White changed his voter registration from the Broad Leaf house to the Pintail apartment. The Pintail apartment was in the district from which White was elected to serve on the Fishers Town Council. That same month, he conveyed his interest in the Broad Leaf house to Mills.
In January 2009, White formed a campaign committee aimed at his candidacy for Secretary of State and filed a Statement of Organization with the Indiana Election Commission, listing the Pintail apartment as his mailing address.
In May 2009, White moved out of the Pintail apartment and into the basement of the Broad Leaf house. The next month, in June, he became engaged to Michelle Quigley, with plans to marry early in 2010 but not to live together until that time. White changed his driver’s license address back to the Broad Leaf house in December 2009, received mail at the Broad Leaf house, and testified that he intended for it to be his principal residence until he and Quigley moved into a third residence on Overview Drive, in Fishers (the “Overview condo”). (Recount Commission’s Add. at 4.) The Overview condo was not in the district from which White was elected to serve on the Fishers Town Council.
In November 2009, White voted in a special election at the Precinct 14 polling site, indicating in the poll book that his address had changed to the Broad Leaf house. (Recount Commission’s Add. at 4.) He testified that he believed he had also changed his voter registration back to Broad Leaf, but this was not the case — on February 22, 2010, he filed an address change with the Board of Voter Registration to effectuate this change. (Recount Commission’s Add. at 5.)
White had begun the process of purchasing the Overview condo in September 2009. Through the course of a drawn-out purchasing process, during which White leased the Overview condo from its seller, White listed the Overview condo as his mailing address on multiple loan application documents, tax documents, utility bills, and employment records, with his former address listed as the Broad Leaf house. Pursuant to the terms of his mortgage, White was to occupy the Overview condo no later than April 27, 2010. Quig-ley and her two children moved into the Overview condo in November 2009, where White’s own child also spent one or two nights a week. (Recount Commission’s Add. at 9.) White’s marriage was delayed from March 2010 to May 2010.
White did not change his voter registration before the May 4, 2010 primary election and voted at the Precinct 12 location *484 for the Broad Leaf house. (Recount Commission’s Add. at 12.) After the primary-election, on May 11, 2010, White filed his Declaration of Candidacy with the Indiana Republican Party. He submitted his state convention delegate form to the Republican Party a week later. On both of these forms, he indicated that Broad Leaf was his address. White and Quigley were married on May 28, 2010, and White moved his belongings out of the Broad Leaf house and into the Overview condo in June 2010. (Recount Commission’s Add. at 12-13.)
The Indiana Republican Party submitted its certification of nomination — listing White as the party’s candidate for Secretary of State — with the Indiana Election Commission on June 22, 2010. It showed White’s address as the Overview condo, but the Broad Leaf house as the mailing address. (Recount Commission’s Add. at 13.) The deadline for this filing was July 15, 2010. On September 20, 1010, White received a new driver’s license showing the Overview condo address.
On September 21, 2010, a resident of Fishers announced a news conference for the next day to reveal White’s failure to reside in the Fishers Town Council district from which he had been elected. White resigned his town council position that same day,[1] and on September 22, 2010, he filed a voter registration application showing his address as the Overview condo, with Broad Leaf as his previous address. (Appellee’s Add. at 5; Recount Commission’s Add. at 13.)
White won the November 2010 general election for Secretary of State, defeating his Democratic Party opponent Yop Osili by more than 300,000 votes.
On November 19, 2010, the chairman of the Indiana Democratic Party, Daniel Parker, filed a verified petition with the Indiana Recount Commission, seeking to contest the results of White’s election under the provisions of Indiana Code §§ 3— 12-11-1, -3. The petition alleged that White was not qualified to assume the office of Secretary of State because he was not registered to vote at the address at which he resided as of July 15, 2010 — the deadline for the Republican Party to file its certificate of nomination — in accordance with Indiana Code § 3 — 8—1—1 (b)(1).
White, now Secretary of State — Elect, moved to dismiss Parker’s petition on November 23, 2010, but the Recount Commission denied his motion on December 5, 2010. On December 6, 2010, White renewed his motion. By a 2-1 vote, the Recount Commission granted White’s second motion to dismiss.[2]
The Democratic Party timely sought judicial review of this decision in the Marion Circuit Court; that court reversed the dismissal and remanded for a full proceeding on the merits.[3]
*485 The Recount Commission held a hearing and received evidence on the matter on June 21, 2011. On June 28, it issued its findings of fact and conclusions of law, and determined that White was eligible to run as a candidate for Secretary of State in 2010. (Recount Commission’s Add. at 1-32.) On December 22, 2011, the Marion Circuit Court again reversed, directing that the Commission declare White ineligible and certify Osili as Secretary of State, in accordance with Indiana Code § 3-12-11-25.[4]
The Recount Commission and White timely filed appeals, and both the Commission and the Indiana Democratic Party sought transfer of jurisdiction to this Court. We accepted the appeals. We now affirm the decision of the Recount Commission.
I. Statutory Framework for Challenging the Election of State Officers
Pre-election challenges to a candidate’s eligibility are governed by Title 3, Article 8 of the Indiana Code. See Ind.Code §§ 3-8-8-1 to -8 (2005 & Supp.2011). A challenge under these provisions “must be filed with the election division not later than noon seventy-four (74) days before the date of the general election at which a candidate to the office is to be elected.” Ind.Code § 3-8-8-3(b).
An appeal may he from the Election Commission’s decision, but regardless of where the matter lies, at noon sixty days before the general election the challenge terminates and the challenged candidate’s name may not be removed from the ballot, nor may a replacement name be submitted. Ind.Code §§ 3-8-8-6, -7(a). Any votes cast for that candidate will be reported under that name. Ind.Code § 3-8-8-7(a)(4).
If the challenged candidate is later found to have been “not qualified to be elected to the office,” the statutes treat the matter as if “[a]n eligible candidate of the same political party, if any, as the ineligible candidate had been elected,” and “[a] vacancy in the office occurred after the election.” Ind.Code § 3-8-8-8(b). In such an instance, “[t]he vacancy in the office shall be filled as otherwise provided by law.” Ind.Code § 3-8-8-8(c).
The Democratic Party, however, filed its petition challenging White’s election pursuant to Title 3, Article 12, which provides a remedy for the state chairman of a candidate’s party to contest “the nomination or election of a candidate” by filing a petition within seventeen days after election day. Ind.Code § 3-12-ll-l(b)(2) (2005); see also Ind.Code § 3-12-11-2 (2005). In addition to various administrative requirements, such a petition must state as the grounds for the contest that
the petitioner in good faith believes that one (1) or more of the following occurred:
(A) The person declared nominated or elected does not comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.
(B) A mistake was made in the printing or distribution of ballots used in the election that makes it impossible to determine which candidate received the *486 highest number of votes cast in the election.
(C) A mistake occurred in the programming of an electronic voting system, making it impossible to determine the candidate who received the highest number of votes.
(D) An electronic voting system malfunctioned, making it impossible to determine the candidate who received the highest number of votes.
(E) A deliberate act or series of actions occurred making it impossible to determine the candidate who received the highest number of votes cast in the election.
Ind.Code § 3-12-ll~3(a), (b)(4) (2005). In the event that an election contest is filed alleging the ineligibility of a candidate, the Recount Commission “shall make a final determination concerning the eligibility of the candidate for nomination or election to the office.” Ind.Code § 3 — 12—11—18(b) (2005).
The Democratic Party filed its challenge under Section 3-12-ll-3(b)(4)(A) by alleging that White, “[t]he person declared nominated or elected,” did “not comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.” Ind.Code § 3-12-ll-3(b)(4)(A). The requirement in question was Indiana Code § 3 — 8—1—1(b)(1) (2005), which states, “A person is not qualified to run for ... a state office ... unless the person is registered to vote in the election district the person seeks to represent not later than the deadline for filing the declaration or petition of candidacy or certificate of nomination.” White had not done so, said the challenge.
II. Indiana Law Strongly Disfavors Post-Hoc Disenfranchisement of Voters
The Indiana Constitution guarantees that “[a]ll elections shall be free and equal.” Ind. Const, art. 2, § 1. Consistent with this guarantee, this Court has always been wary of overturning the will of the voters who have freely and willingly cast their ballots. See, e.g., Burke v. Bennett, 907 N.E.2d 529 (Ind.2009) (“This application of the Indiana disqualification statute is consistent with the longstanding respect for the right of the people to free and equal elections ... and the reluctance of this Court to remove from office a person duly elected by the voters.”). We liberally construe the statutes governing post-election contests “ ⅛ order that the will of the people in the choice of public officers may not be defeated by any merely formal or technical objections.’” Pabey v. Pastrick, 816 N.E.2d 1138, 1148 (Ind.2004) (quoting Tombaugh v. Grogg, 146 Ind. 99, 103, 44 N.E. 994, 995 (1896)).
Even where facts are alleged that might if later proven render a candidate ineligible, “[t]he existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it.” Oviatt v. Behme, 238 Ind. 69, 74, 147 N.E.2d 897, 900 (1958) (quoting People ex rel. Furman v. Clute, 50 N.Y. 451 (1872)). Those voters who are lawfully qualified to participate in our democratic process “may not be disenfranchised except by their own willful or deliberate act to the extent that one who did not receive the highest vote cast may still be declared elected.” Id. at 74-75, 147 N.E.2d at 900.
The Recount Commission had these principles in mind when it concluded that White was properly qualified to assume the office of Secretary of State. (Recount Commission’s Add. at 15-16.) The ques *487 tion before us is therefore whether this action of the Commission was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law” and “substantially prejudiced” the Indiana Democratic Party, Ind.Code § 3-12-10-18 (2005), such that we should judicially nullify the votes of the hundreds of thousands of Indiana citizens who cast their ballots for White. We conclude that it was not, because the Indiana Democratic Party’s challenge was untimely.
The recount and contest procedures of Chapter 11 create two periods of time in which to bring a petition for a contest or recount: one immediately following a primary election and another immediately following a general election.[5] This window closes for a losing candidate fourteen days after the election and seventeen days after the election for the losing candidate’s political party. Ind.Code § 3-12-ll-2(a)-(b).
A challenge brought in the intervening time between these two periods must comply with the provisions addressing the removal of a candidate’s name from the ballot. See Ind.Code §§ 3-8-8-1 to -8. These provisions provide for a challenge “(1) questioning the qualification of a candidate to seek the office; and (2) setting forth the facts known to the voter concerning this question.” Ind.Code § 3 — 8—8—3(c). As we detailed above, the challenge must be filed with the Election Commission no later than the seventy-fourth day before the general election. However, these same statutes also expressly provide for the possibility that a pre-election challenge cut off by the sixty-day rule may be revived or continued after the election and operate to disqualify an elected candidate. See Ind. Code § 3-8-S-8.
Here, the Indiana Democratic Party filed a post-election challenge pursuant to Section 3 — 12—11—3(b)(4), alleging that White violated Section 3 — 8—1—1(b) in that he was not “registered to vote in the election district [he sought] to represent,” because on July 15, 2010, he was registered to vote at the Broad Leaf address, not the Overview condo.
Of course, the Democratic Party could not have brought this claim in the post-election period after the May 2010 primary election because when that time limit expired, White still had until July 15th to comply with the requirements of Section 3-8-1-1. What remains, then, is whether the claim was still valid under Section 3-12-11-2 when brought following the general election, or if it must have been brought earlier under Section 3-8-8-1.
This question is not new to us. See Burke, 907 N.E.2d at 531-33. In Burke, we dealt with a post-election disqualification challenge brought in a local election pursuant to Ind.Code § 3-12-8-6(a)(3)(A), which parallels the language of Section 3-12-ll-3(b)(4)(A). Id. at 531. The challenge rested on an allegation that the winning candidate could not assume office because his prior employment was connected *488 with activities financed at least in part by the U.S. government. Id. at 530-31. This is forbidden by federal law under the Little Hatch Act, and is likewise a disqualification under Indiana’s election statutes. See id.; see also 5 U.S.C. § 1502 (2006); Ind.Code § 3-8-l-5(c)(6) (2005 & Supp. 2011) (“A person is disqualified from assuming or becoming a candidate for an elected office if ... the person is subject to 5 U.S.C. 1502 (the Little Hatch Act)_”). It was accepted, though, that at the time the winning candidate assumed office, he would no longer be employed in his prior position. Burke, 907 N.E.2d at 532. We affirmed the trial court’s decision to uphold the election results. Id. at 533.
As we pointed out, the disqualification challenge for a Little Hatch Act violation could properly be brought before or after the election — but “[t]he point in time at which the statute’s disqualifies are to be assessed depends upon whether the challenger is using the statute to prevent another person from being a candidate or from assuming office.” Id. at 532. In either case, however, the language of the disqualification provision at issue in Burke “focuses on current or prospective status as the basis for disqualification,” whereas “several of the statute’s other provisions clearly refer to a person’s past conduct as grounds for disqualification.” Id.
So in addition to the election winner’s change in employment being dispositive, we viewed the question as not “whether a successful candidate was subject to the Act or had been in violation of it when the candidate became or remained a candidate.” Id. (emphasis in original). Instead, the question was “whether the election winner is subject to the Act and whether he would violate it by becoming or remaining a candidate.” Id. (emphasis in original). Because that necessarily required proof that the individual “would, in the future, violate the Act by becoming or remaining a candidate,” we found the disqualification was inapplicable in the post-election contest to establish a candidate’s ineligibility because from the time the challenge was filed until the date of assumption of office, the defendant was no longer a candidate. It was simply impossible to find that the winner “is subject to” and “would violate” the Little Hatch Act by “becoming or remaining a candidate.” Id. (emphasis in original).
We recognized in Burke that our approach would restrain the application of the Little Hatch Act disqualification provision in post-election contests, but that it would not “impede the pre-election application of subsection 5(c)(6) to challenge a person’s qualifications to be a candidate for elected office.” Id. at 532. A similar approach is merited here for several reasons.
First, the language of Section 3-12-11-3(b)(4)(A) speaks in the present tense, “does not comply,” which suggests that the claim must be analyzed as of the time that it is brought. In essence, however, the Democratic Party seeks a reading of Section 3-12-ll-3(b)(4)(A) that permits a challenge when “[t]he person declared nominated or elected” did not “comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.” But unlike others, this subsection is not written to encompass a past-tense violation — only a current and ongoing one. Cf. Ind.Code §§ 3-12-ll-3(b)(4)(B) (“A mistake was made ”), -3(b)(4)(C) (“A mistake occurred ”), -3(b)(4)(D) (“An electronic voting system malfunctioned ”), 3(b)(4)(E) (“A deliberate act or series of actions occurred ”) (emphasis added in all).
Similarly, the specific statutory requirement at issue here is concerned with the current status of the candidate. It pro *489 vides that “A person is not qualified to run ... unless the person is registered to vote in the election district the person seeks to represent.” Ind.Code § 3-8-1-1(b). As we also noted with Burke’s requirement, this contrasts with other disqualifying provisions that are aimed specifically at past conduct. See Ind.Code § 3-8-1 — 5(c)(1) (2005 & Supp.2011) (disqualification if “the person gave or offered a bribe, threat, or reward to procure the person’s election”), -5(c)(3) (disqualification for felony convictions), -5(c)(4) (disqualification if “the person has been removed” from office); see also Burke, 907 N.E.2d at 532.
Viewed through that lens, when the challenge was filed post-election White was correctly registered at his place of residence — the Overview condo — in the election district he sought to represent— i.e., the State of Indiana. And the next deadline by which he would have had to accomplish this would not occur for several more years — when or if he had to file a declaration or petition of candidacy or certificate of nomination for the 2014 elections.
But further, the statutes governing pre-election document filings — such as the certificate of nomination filed by the Indiana Republican Party and White’s Declaration of Candidacy — also provide an express procedure through which a voter may challenge the validity of those filings within the time limits for pre-election challenges. See Ind.Code § 3-8-1-2 (2005). Under this provision, a registered voter within the candidate’s election district may file a sworn statement with the election division “(1) questioning the eligibility of a candidate to seek the office; and (2) setting forth the facts known to the voter concerning this question.” Ind.Code § 3-8-l-2(c). The Election Commission must then determine the validity of the questioned filing, Ind.Code § 3-8-l-2(f), and shall deny that filing if it determines that “the candidate has not complied with the applicable requirements for the candidate set forth in the Constitution of the United States, the Constitution of the State of Indiana, or this title,” Ind.Code § 3-8-l-2(g) (emphasis added). This, of course, includes the grounds for the challenge here.
This is the route that would have been open to the Indiana Democratic Party in this instance. To be sure, the allegations about White found their way into the press after the deadlines had passed for pre-election challenges that seek to remove a candidate’s name from the ballot. See Ind. Code §§ 3-8-8-3(b), -7(a). At oral argument, however, the Commission reasonably observed that the exercise of more due diligence by the Democratic Party might have made a pre-election challenge possible. After all, none of the filings at issue — not White’s voter registration, not the Certificate of Nomination, nor White’s Declaration of Candidacy — were confidential or sealed. In fact, the discrepancy was discovered by a private citizen, presumably acting without the aid or benefit of a statewide party’s resources and experience, and the Democratic Party has pointed us to nothing in their briefs to demonstrate the impossibility of their dis-. covering White’s registration issues at an earlier date.
Our conclusion is that the Code places a burden on political campaigns to investigate and vet their opposition before the pre-election time limitations expire, but that is better than the alternative: that a challenger might ignore a known (or knowable) disqualification challenge before the election, wait to see who won at the polls, and then seek to set aside the results of the democratic process. Such a result is inconsistent with free elections and respect for voters’ expressed preferences.
*490 Here, the allegations of White’s registration impropriety arose before the election and were made public by private citizens, the media, and by the Osili campaign and by the Democratic Party. It is likely that the average voter was aware that there were concerns about White’s voter registration history at the time of the election, but we will not, on the basis of the present petition, judicially disenfranchise voters who went to the polls aware of what were at that moment only allegations. The fact that criminal charges were filed after the election and resulted in convictions (appeals still pending) does not alter that conclusion.
Conclusion
We therefore reverse the decision of the trial court and affirm the Commission’s dismissal.
SULLIVAN, RUCKER, and DAVID, JJ., concur.
DICKSON, J., concurs in result with separate opinion.

. As a result of this course of conduct, White was indicted in Hamilton County on seven criminal counts that included fraudulent voter registration, perjury, fraud on a financial institution, voting outside of precinct, casting a fraudulent ballot, and theft. A jury subsequently found him guilty of six of those seven counts, and his appeal is presently pending.

. This decision seems to have been made by voice vote, with no particularized written findings or conclusions. (Recount Commission’s App. at 126-34.)

.White and the Recount Commission appealed this ruling to the Court of Appeals and the Indiana Democratic Party sought transfer of jurisdiction to this Court pursuant to Indiana Appellate Rule 56(A). White v. Ind. Democratic Party, 946 N.E.2d 1171 (Ind.2011). We assumed jurisdiction and dismissed White and the Commission's appeal because the trial court’s order did not constitute a final judgment. Id. at 1172.

. This Code section previously provided that if the Recount Commission found a candidate ineligible to serve in office, then the runner-up would be declared the winner. Ind.Code § 3-12-11-25 (2005). But during the 2011 legislative session, and while this litigation was pending, the General Assembly added language providing that if this circumstance arose again, the vacancy would be filled by gubernatorial appointment of an individual from the same political party as the ineligible winner. Act of May 13, 2011, P.L. 225-2011, § 78, 2011 Ind. Acts 3276-77; Ind.Code § 3-12-11-25 (Supp.2011).

. See Ind.Code § 3 — 12—11—1(a) (“Any candidate: (1) in a presidential primary election; (2) for nomination to a federal, state, or legislative office in a primary election; or (3) for a federal, state, or legislative office; is entitled to have the votes cast for that office recounted or to contest the nomination or election of a candidate....”); Ind.Code § 3-12-1 l-2(a) ("A candidate who desires: (1) a recount of votes cast for a nomination or election ... or (2) to contest a nomination subject to this chapter or the election of a state office other than governor or lieutenant governor; must file a verified petition ... not later than noon fourteen (14) days after election day.”); Ind. Code § 3 — 12—11—3(b)(4) ("That the petitioner in good faith believes that one (1) or more of the following occurred: (A) The person declared nominated or elected does not comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.”).