


FILED

Jun 19 2025, 12:29 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-MI-148

## Ross G. Thomas,
*Appellant/Plaintiff,*

–v–

## Joseph Foyst,
*Appellee/Defendant.*

---

Argued: March 13, 2025 | Decided: June 19, 2025

Appeal from the Bartholomew Circuit Court
No. 03C01-2309-MI-4658
The Honorable K. Mark Loyd, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-MI-251

---

### Opinion by Justice Molter

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff concurs in part and dissents in part with separate opinion.

**Molter, Justice.**

No candidate ran in the 2023 Republican primary election for the District 6 seat on the Columbus City Council, so the Bartholomew County Republican Party held a caucus to choose its general election nominee. The caucus chose Joseph Foyst. But the chairman of the Bartholomew County Democratic Party—Ross Thomas—sued for a declaratory judgment that Foyst was ineligible to appear on the ballot because, Thomas claimed, the Republican Party missed a statutory deadline for choosing its nominee. Thomas's suit was not resolved before the election, which Foyst won, and after the election, the Bartholomew Circuit Court denied Thomas's claim. But the Court of Appeals reversed, agreeing that the Republican Party missed the deadline; holding that Foyst's candidacy was therefore void ab initio; and remanding with instructions to declare Bryan Muñoz—the second-place finisher—winner of the council seat.

Today we grant transfer and remand to the circuit court to dismiss the case as moot. The Indiana General Assembly created two avenues for election disputes, each with distinct requirements—one avenue for pre-election candidacy "challenges" to determine who can be on the ballot, and another avenue for election "contests" to determine who should be declared the winner. Thomas did not file, and expressly disclaimed, an election contest. Yet that is the only candidacy dispute with a statutory remedy of declaring the second-place finisher the winner when the first-place finisher's nomination was statutorily invalid. Because Thomas instead brought only a pre-election challenge, his only requested relief was to prohibit Foyst from appearing on the ballot. But the election is over, and Foyst already appeared on the ballot, so Thomas's request is moot.

In short, before Thomas can prevail upon the courts to set aside election results based on a claim that the rival political party misstepped when nominating its candidate, Thomas must himself take the statutorily required steps for an election contest.

# Facts and Procedural History

## I. Ballot Vacancy

The material facts are not in dispute. After no Republican ran in the 2023 primary election for the Columbus City Council District 6 seat, the Bartholomew County Republican Party sought to fill that candidate vacancy for the November general election. On June 22, 2023, Joseph Foyst filed paperwork to seek the party's nomination, and that same day the party filed a notice of its intent to hold a July 1 caucus to select a vacancy-filling candidate.

As with much of our election law, filling a candidate vacancy is strictly governed by statute. If a major political party is left with an "early candidate vacancy"—which is a vacancy on the general election ballot that arises "for any reason" after the primary election and until thirty days before the general election—the party can fill that vacancy using the processes outlined in Indiana Code chapter 3-13-1. Ind. Code § 3-13-1-1 (2024).[1] For a local office such as a city council seat, the vacancy can be filled in multiple ways.

Here, the party chose to use a caucus of eligible precinct committee members. *See* I.C. § 3-13-1-6(b). To properly call that caucus meeting, the party had to fulfill several conditions, including filing the call for the meeting with the circuit court clerk "not later than noon ten (10) days before the meeting." I.C. § 3-13-1-9(b)(6). But by filing the notice on June 22, only nine days before the proposed July 1 caucus, the party was one day late.

Still, the clerk accepted the party's late filing despite statutory provisions forbidding the receipt of such filings after the statutory deadline. *See* I.C. § 3-5-4-1.9(c) (general prohibition on late filings); I.C. § 3-

---

[1] Unless indicated otherwise, all other statutory citations are to the version in effect during the election.

13-1-21(b) (forbidding the person responsible for receiving a certificate of candidacy from accepting the filing if the notice of caucus, declaration of candidacy, or the certificate of candidate selection is not offered by the statutory deadline). So the party caucused nine days later, and the precinct committee members unanimously selected Foyst as the Republican candidate. Then, on July 5, the party filed its certificate of candidate selection—officially nominating Foyst—with the Bartholomew County circuit court clerk.[2]

Just as the legislature anticipated these early candidate vacancies might arise, it also anticipated there might be challenges to the eligibility of candidates hoping to fill a ballot vacancy. *See* I.C. § 3-13-1-16.5 (providing an avenue to file a pre-election challenge to the validity of a certificate of candidate selection). As the county's Democratic Party chairman, Ross Thomas was statutorily authorized to file a section 16.5 pre-election challenge to a candidate's eligibility, *see* I.C. § 3-8-1-2(d), and he submitted such a challenge to the county election board on July 26, alleging Foyst's ineligibility due to the untimely caucus notice. The county election board granted the challenge, and Foyst was removed from the ballot.

Generally, the deadline to fill an early candidate vacancy is noon on July 3. I.C. § 3-13-1-7(a)(1). But there are exceptions. If, for instance, a vacancy arises due to unforeseen circumstances after July 3, like the death, withdrawal, or disqualification of a candidate, the party with the vacancy has thirty days from the vacancy's occurrence to fill the spot with a new candidate. I.C. § 3-13-1-7(b). As relevant here, the legislature amended this subsection in 2021 to authorize political parties to fill a vacancy resulting

---

[2] A candidate vacancy that arises between the primary election and thirty days before the general election must be filled no later than noon July 3 before the general election. *See* I.C. § 3-13-1-2; I.C. § 3-13-1-7(a) (reiterating the July 3 at noon deadline for filling a general election vacancy). The Bartholomew County courthouse was closed on July 3 for the holiday, however, so the Republican Party was unable to file its certificate of candidate selection until July 5. Thomas does not challenge the certificate of candidate selection's filing as untimely based on the July 3 deadline, and he has equivocated on whether the proper filing deadline was July 3 or July 5. *See* App. Vol. 2 at 102 (claiming the deadline was July 3); *id.* at 106 (claiming the deadline was July 5). Because he did not challenge the July 3 deadline below, his only claim is that the Republican Party missed the June 21 deadline to file the notice of caucus.

from the sort of challenge Thomas filed:"[t]he successful challenge of a candidate under section 16.5 . . . of this chapter." I.C. § 3-13-1-7(b)(7).

Because there was again a candidate vacancy following Thomas's successful challenge of Foyst, the Republican Party again sought to fill the spot for the District 6 city council seat. And since there are no explicit statutory prohibitions against re-nominating the same candidate, Foyst filed a second declaration of candidacy on August 24 and was selected by a second Republican caucus. With the circuit court clerk's August 30 acceptance of the party's second certificate of candidate selection, Foyst officially became the nominee, again.

On September 6, Thomas filed a section 16.5 challenge to Foyst's second candidacy. This time Thomas argued that because Foyst missed the July certificate of candidate selection deadline, there was no longer a vacancy that the Republican Party could fill, and the clerk's mistaken acceptance of the party's earlier, untimely filing could not reopen the window for filling a vacancy. But by the time Thomas filed his second section 16.5 challenge, the window had closed to file that kind of pre-election challenge since those challenges are only permitted up to seventy-four days before the general election. *See* I.C. § 3-13-1-16.5. In 2023, that deadline was August 25, the day after Foyst filed his second declaration of candidacy and five days before the Republican Party filed its second certificate of candidate selection. Thus, the county election board rejected Thomas's September 6 challenge as untimely.

## II.  Trial Court Proceedings

Thomas also turned to the courts, although he declined to seek judicial review of the county election board's administrative decision denying his second challenge. *See* I.C. § 3-6-5-34 ("Except as expressly provided by statute, an appeal may be taken from a decision of a county election board to the circuit court, superior court, or probate court."). Instead, the same day he filed his second section 16.5 administrative challenge, he also filed a complaint for declaratory and injunctive relief in the Bartholomew Circuit Court against Foyst and members of the county election board.

In that complaint (as amended), Thomas asked the court for a declaration that Foyst "is ineligible to appear as a candidate for Columbus Common Council, District 6, on the 2023 general election ballot" and an injunction to keep Foyst from appearing on the ballot. App. Vol. 2 at 84. After a November 1 hearing on the complaint, when it became clear that removing Foyst's name from the ballot was no longer a reasonable possibility because there wasn't enough time, Thomas voluntarily dismissed the election board and his claim for injunctive relief. But his declaratory judgment claim was still pending when the general election took place on November 7, in which Foyst received the majority of the votes—454 to his Democratic opponent Bryan Muñoz's 309.

Twenty days after the election, Foyst—the only remaining defendant—moved to dismiss Thomas's claim. Foyst argued the court lacked subject matter jurisdiction because the election had taken place and Thomas had failed to file a contest to the election, as required by statute. So once the deadline to file an election contest passed, Foyst contended, the court lacked jurisdiction to make any declarations about Foyst's eligibility through a pre-election challenge. On January 17, 2024, the circuit court sided with Foyst, denying Thomas's request for declaratory relief based in part on the undisputed fact that "no additional election challenge has been filed relating to [Foyst] since the general election." App. Vol. 2 at 170.

The circuit court also agreed with the county election board that Thomas's pre-election challenge was untimely. The court expressed concern that the statutory deadline for the pre-election challenge was days before Foyst's second certificate of candidacy was filed. But the court ultimately determined there was no statutory mechanism for Thomas to pursue a pre-election challenge to Foyst's candidacy after that seventy-four-day deadline.

## III.   Court of Appeals Proceedings

Thomas appealed, and the Court of Appeals reversed and remanded with instructions to declare Muñoz the winner. *Thomas v. Foyst*, 239 N.E.3d 95 (Ind. Ct. App. 2024). In making that decision, the appellate panel looked to this Court's precedent in *Higgins v. Hale*, which held that

the failure to meet a statutory deadline for filling a vacancy on a general election ballot made a candidate's nomination "void and of no effect." 476 N.E.2d 95, 100 (Ind. 1985). The panel reasoned that because the county clerk was barred by statute from receiving the candidacy filings after the July 3 deadline, Foyst's first candidacy "never existed in the eyes of the law," meaning Foyst was never a "duly selected candidate" for whom a successful challenge would create a general election ballot vacancy under Indiana Code section 3-13-1-7(b)(7). *Thomas*, 239 N.E.3d at 99. And because the panel concluded Foyst was never a candidate, it reasoned that Muñoz had to be declared the winner.

## IV. Transfer Petition

Foyst then petitioned for transfer, which we grant today, thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A). Given the statewide importance of the election law issues Thomas raised—especially to state and local election officials, political parties, and candidates—we also invited further amicus briefing from the Office of the Indiana Attorney General and other interested amici. In response, we received insightful briefs from the Indiana Democratic Party and the Office of the Indiana Attorney General, for which we are grateful.

Justice Goff's dissenting opinion explains he would prefer that we deny transfer. From his perspective, prudence counsels that we "exercise judicial restraint" by denying transfer because the General Assembly's recent amendment to the statutory definition of "candidate" should foreclose any future challenges like Thomas's. *Post*, at 1–2. After the circuit court's judgment denying Thomas's claim and before the Court of Appeals's decision reversing that judgment, the General Assembly amended the statutory definition of "candidate" to expressly include someone in Foyst's position—someone filling a vacancy under either the early or late vacancy statute, and whose candidacy was found void or invalid by an election board, the election commission, or a court. *See* I.C. § 3-5-2-6(c) (2024). So even if it was wrong for the Court of Appeals to overturn the election based on Thomas's argument, courts likely won't make that mistake again.

That's a fair point, but we conclude judicial restraint still weighs more heavily in favor of granting transfer. Though courts sometimes must overturn elections, that is an obviously fraught exercise of judicial power, which is why we often say courts should be "wary of overturning the will of the voters who have freely and willingly cast their ballots." *White v. Ind. Democratic Party ex rel. Parker*, 963 N.E.2d 481, 486 (Ind. 2012); *see also, e.g.*, *Burke v. Bennett*, 907 N.E.2d 529, 532 (Ind. 2009) ("This application of the Indiana disqualification statute is consistent with the longstanding respect for the right of the people to free and equal elections, Ind. Const. art. 2, § 1, and the reluctance of this Court to remove from office a person duly elected by the voters."); *State ex rel. Harry v. Ice*, 191 N.E. 155, 157 (Ind. 1934) ("The purpose of the law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disfranchisement. In the absence of fraud, actual or suggested, statutes will be liberally construed to accomplish this purpose."). And courts constrain their role in protecting our Indiana Constitution's guarantee that "[a]ll elections shall be free and equal," Ind. Const. art. 2, § 1, by not only honoring the General Assembly's carefully calibrated candidacy requirements, but also by adhering to its carefully calibrated scheme for candidate and election challenges. That includes enforcing the legislature's chosen deadlines, the forums it has selected for adjudicating those challenges, the procedural requirements it imposes, and the remedies it has selected.

As we explain below, Thomas ignored many of those rules. So from our perspective, when, as here, an election challenger has not followed the General Assembly's rules for challenging an election, judicial restraint compels letting the election results stand rather than letting a judicial decision overturning the election stand.

Having granted transfer, we assume jurisdiction over the appeal and review the circuit court's decision denying Thomas's challenge.

## Standard of Review

This appeal presents purely legal questions, which we consider de novo. *Matter of Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019).

## Discussion and Decision

Thomas argues that the Bartholomew County Republican Party did not timely fill its candidate vacancy, and, as a result, we should set aside the election results and declare the second-place finisher the winner. We decline to do so. As we explain below, we first confirm that Thomas has standing to sue on behalf of the Bartholomew County Democratic Party. But we next conclude that the only claim he preserved in the circuit court is now moot.

That is because Thomas filed his amended complaint before the election, and he persisted only with a request for a declaration that Foyst should not appear on the general election ballot. Thomas never filed an election contest to set aside the election results. But now that the election is over and Foyst already appeared on the ballot, Thomas's request to prevent Foyst's name from appearing on the ballot is moot. And Thomas cannot, on appeal, request different relief—to set aside the election results—without first following the statutory requirements for that claim.

## I. Thomas has standing to pursue his claim.

Our Indiana Constitution's separation of powers limits us to the judicial power, and the judicial power limits us to resolving cases brought by litigants with standing. *See Horner v. Curry*, 125 N.E.3d 584, 589 (Ind. 2019) (citing Ind. Const. art. 3, § 1) ("[T]he express distribution-of-powers clause in our fundamental law . . . serv[es] as a principal justification for judicial restraint."). Thus, "the threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute." *Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 167 (Ind. 2024) (quotations omitted). And to establish standing, the plaintiff must "demonstrate a personal stake in the outcome of the litigation and show

that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Id.* (quotations omitted).

The legislature has recognized that political parties have a direct stake in many election rules and resulting disputes, so in many instances throughout the election code it has authorized the parties, through their chairs, to file administrative challenges and to sue in court. *See, e.g.*, I.C. § 3-8-1-2(d) (authorizing a pre-election challenge by a county chair of a major political party in which the election district is located to question the eligibility of a candidate to seek office); I.C. § 3-12-8-1(c) (authorizing the county party chair to file an election contest in the event that party's candidate declines to file a post-election contest); I.C. § 3-6-5-34 (authorizing party chairs to seek judicial review of county election board decisions). All litigants in this dispute agree that, consistent with our Constitution's separation of powers, the legislature authorized the Bartholomew County Democratic Party—through its chair—to file a pre-election challenge to Foyst's appearance on the ballot, to seek judicial review of the county election board's decisions, and to file a post-election contest to set aside the election results.

But the captions for Thomas's appellate filings read as if he sued in his *individual* capacity on his own behalf rather than on behalf of the party. And he may not have standing to sue on his own behalf because his mere personal disappointment with the election outcome is not the sort of particularized injury our constitution requires for standing. *See Founds. of E. Chicago, Inc. v. City of E. Chicago*, 927 N.E.2d 900, 903 (Ind.), *clarified on reh'g*, 933 N.E.2d 874 (Ind. 2010) ("It is generally insufficient that a plaintiff merely has a general interest common to all members of the public."). We therefore directed, before oral argument, that the parties address whether Thomas has standing to sue in this case.

At oral argument, Thomas clarified that he was suing not on his own behalf but on behalf of the Bartholomew County Democratic Party in his capacity as party chairman, just as the Indiana Code authorizes. That clarification is consistent with the caption on his amended complaint, which says that he is suing "in his capacity as Chairman of the Bartholomew County Democratic Party." App. Vol. 2 at 78. So while the

typical and better practice is for party chairs to indicate in their appellate filings that they are suing in their official capacity on behalf of their political party, we are satisfied that the combination of Thomas's representation at oral argument in our Court and his circuit court filing establish his standing to sue. *See White v. Ind. Democratic Party ex rel. Parker*, 963 N.E.2d 481, 481 (Ind. 2012) (considering an election challenge that was captioned on appeal as brought by the "Indiana Democratic Party, through its Chairman, Daniel J. Parker").

Having confirmed that standing is proper here, we turn to whether there remains a live dispute for us to resolve.

## II.   Thomas's claim that Foyst cannot appear on the ballot is moot.

The legislature created two avenues for disputing a person's candidacy: an Article 8 pre-election "challenge" and an Article 12 election "contest." *See White v. Ind. Democratic Party ex rel. Parker*, 963 N.E.2d 481, 485 (Ind. 2012). As the distinct labels indicate, these are two distinct paths with unique requirements and results. Article 8 challenges determine who should appear on the ballot. They begin with statutorily-required allegations made to administrative bodies like county election boards, I.C. § 3-8-1-2, and those administrative decisions are subject to judicial review, I.C. § 3-6-5-34. Article 12 contests determine the election results. For local offices, they begin with a verified petition containing statutorily-required information filed in court, I.C. § 3-12-8-5, and they are subject to statutorily-required hearing procedures, *see* I.C. § 3-12-8-17. A successful candidacy challenge can remove a name from the ballot; a successful election contest can set aside the election results and declare a second-place finisher the winner. Thomas pursued the first avenue, but his request for a declaration that Foyst cannot appear on the ballot was moot after Foyst won the election, and Thomas explicitly disclaimed an Article 12 election contest, which is the only way to set aside election results. We must therefore remand to the circuit court to dismiss the case as moot.

## A. Thomas filed a pre-election challenge.

Before the election, Thomas unsuccessfully filed his second challenge to Foyst's candidacy with the election board under Indiana Code section 3-8-1-2. That statute compels the board to "deny a filing"—including a certificate of candidate selection like the one filed for Foyst—if "the candidate has not complied with the applicable requirements." I.C. § 3-8-1-2(h). And that decision may be appealed to the courts for judicial review. I.C. § 3-6-5-34.

After the board denied Thomas's second challenge as untimely, he sued for a declaratory judgment that Foyst "is ineligible to appear as a candidate for Columbus Common Council, District 6, on the 2023 general election ballot." App. Vol. 2 at 84. While Thomas did not seek judicial review of the board's decision denying his challenge, he views his declaratory judgment action as equivalent to judicial review.

But even assuming Thomas can substitute a declaratory judgment action for judicial review, now that the election is over, Thomas's request to declare that Foyst cannot appear on the ballot is moot. Foyst already appeared on the ballot, so the courts can no longer provide Thomas the relief he requested. *See Matter of Lawrance*, 579 N.E.2d 32, 37 (Ind. 1991) ("The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court."); *State ex rel. Makowski v. Grandys*, 139 N.E.2d 436, 437 (Ind. 1957) (holding that the election mooted an individual's request to mandate the election board to list them on the ballot); *see also generally* 2 Ind. Law Encyc. Appeals § 239 (explaining that "the question of the right of a candidate to have his or her name placed upon the ballot becomes moot upon the holding of the election"); *accord McDonald v. Cook Cnty. Officers Electoral Bd.*, 758 F. App'x 527, 529–30 (7th Cir. 2019) ("Her case is moot because the relief that she specifically sought in the district court in her motion for interlocutory relief—an order that she be included on the ballot—would not affect the results of an election that has already happened."); *Bogaert v. Land*, 543 F.3d 862, 871 (6th Cir. 2008) (Clay, J., dissenting) ("This Court and other Circuits repeatedly have held that an appeal from a preliminary injunction ordering an issue or candidate to be

placed on or stricken from a ballot becomes moot when the election is completed and the results final.").

And it makes no difference that Thomas's only remaining request was merely for declaratory relief because "[a] court may not, in general, consider a request for declaratory judgment if the case is moot or calls merely for an advisory opinion." *Bookwalter v. Ind. Election Comm'n*, 209 N.E.3d 438, 443 (Ind. Ct. App. 2023), *trans. denied*. Thomas's claim must therefore be dismissed as moot. *See Lawrance*, 579 N.E.2d at 37 ("When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will be dismissed." (quotations omitted)).

That is not to say Thomas had no procedural means to challenge the election results based on his claim that Foyst's candidacy was invalid. Thomas did have that option; he just chose not to pursue it, which we discuss next.

### B.    Thomas did not file an election contest.

The only statutory authority for a court to set aside election results is through an election contest under Title 3, Article 12. In the case of an election for local office, Article 12 provides that remedy for a candidate or the county chairman of that candidate's political party who successfully contests "the nomination or election of a candidate" by filing a contest within seventeen days after election day. I.C. § 3-12-8-1(c); *see also* I.C. § 3-12-8-5.

In Thomas's case, he still could have disputed Foyst's *nomination*—not just his election—after the Article 8 challenge deadline by filing a verified petition alleging, among other statutorily-required information, that "[t]he person declared nominated or elected does not comply with a specific constitutional or statutory requirement . . . applicable to the candidate for the office." I.C. § 3-12-8-6(a)(3)(A). At that point, once an election contest is filed with the circuit court clerk, it becomes the responsibility of the circuit court judge to follow statutory hearing procedures and to decide the dispute. I.C. § 3-12-8-17(a), (b). And if the court finds that the challenged

candidate is ineligible, the statute instructs the court to provide the extraordinary remedy of setting aside the election results to "declare as elected or nominated the *qualified* candidate who received the highest number of votes and render judgment accordingly." I.C. § 3-12-8-17(c) (emphasis added); *see also Kite v. Curlin*, 139 N.E.3d 1113 (Ind. Ct. App. 2019) (overturing an election through an Article 12 election contest where the initially victorious school board candidate did not meet the residency requirement), *trans. denied*. But this route was only open until seventeen days after the general election, and Thomas not only declined to file an election contest, he expressly disavowed such a contest.

Thomas does ask us on appeal to set aside the election results, but that was not the relief he sought in his amended complaint in the circuit court, and it is well settled that "[o]n appeal, a party may not request relief for which he made no claim to the trial court." *See, e.g.*, *Tomahawk Vill. Apartments v. Farren*, 571 N.E.2d 1286, 1294 (Ind. Ct. App. 1991) (citing *Vandalia R.R. Co. v. Mizer*, 112 N.E. 522, 524 (Ind. 1916)). He is also unable to point to any statutory authority for us to set aside the election results through his Article 8 candidacy challenge or declaratory judgment action. And we cannot convert Thomas's candidacy challenge to an election contest. While there are election statutes for some state-wide offices that "expressly provide for the possibility that a pre-election challenge cut off by the [seventy-four day] rule may be revived or continued after the election and operate to disqualify an elected candidate," *White*, 963 N.E.2d at 487 (citing I.C. § 3-8-8-8), a local office like city council is not among those offices, *see* I.C. § 3-8-8-1, meaning no statute allows a possible revival of Thomas's pre-election challenge.

Thomas attempts to avoid these problems by relying on *Higgins v. Hale*, 476 N.E.2d 95 (Ind. 1985). That case was similar in many key respects—after no candidate ran in the primary, the local Republican Party nominated a candidate through a meeting of local party leaders; the Democratic Party filed a declaratory judgment action claiming that the Republican Party failed to give adequate notice of their meeting to select their candidate; and the dispute was not resolved until after the election, which the Republican candidate won. *Id.* at 101. After our Court agreed that the Republican Party had not complied with the statutory deadline

for nominating their candidate, we held that the nomination was "void and of no effect." *Id.*

But *Higgins* doesn't help Thomas because the legislature has since overhauled the election code. Title 3 was substantially amended and recodified in 1986, the year after *Higgins* was decided. Part of that overhaul included adding a definition of "candidate" where there previously was none, a definition that would include someone like Foyst—or the Republican candidate in *Higgins*—who might not have met the statutory requirements but nevertheless represented themselves to the public as a candidate. *See* I.C. § 3-5-2-6(2) (1988) (defining a "candidate" broadly, in part, as a person who "has publicly announced or declared candidacy for an elected office").

Also, before the recodification, there was no statutory mechanism for challenging someone's candidacy, *see* I.C. §§ 3-1-11-1 to 3-1-11-11 (1982), and the only statutory path was to contest an election after the fact, *see* I.C. §§ 3-1-28-1 to 3-1-28-6 (1982). So the only way to challenge or affirm a candidate's eligibility any time before the election was through something like a declaratory action. *See, e.g.*, *Oviatt v. Behme*, 147 N.E.2d 897 (Ind. 1958). Further, provisions for filling ballot vacancies—as well as how and when someone can challenge those candidates and the remedies for those challenges—are all part of the statutory framework that has since been written and rewritten; what was once a page-long, single section on general ballot vacancies now spans over forty pages of the code. *See* I.C. §§ 3-13-1-1 to 3-13-11-21. This is to say that the circumstances in which the *Higgins* Court determined the process and effect of a candidacy challenge, reviewed those questions through a declaratory judgment, and converted the pre-election challenge to a post-election contest have all changed significantly since 1985.

Our dissenting colleague disagrees and, citing *Wyatt v. Wheeler*, 936 N.E.2d 232 (Ind. Ct. App. 2010), concludes that we should treat Thomas's candidacy challenge as an election contest despite the contrary statutory authority. *Ante*, at 3. But *Wyatt* cuts the other way. There, a candidate incorrectly indicated on her candidacy form that she was eligible to run in the Republican primary because she had voted most recently in a

Republican primary, but she had actually voted most recently in a Democratic primary. *Wyatt*, 936 N.E.2d at 236. A voter challenged her eligibility before the primary election, but that challenge was not resolved until after. *Id.* The Court of Appeals held that the challenge was not moot because a challenge to the candidate's "eligibility for the primary election is implicitly also a challenge to her eligibility for the general election, *which ha[d] not yet taken place.*" *Id.* at 237 (emphasis added). But the general election here has taken place.

And even if we concluded *Wyatt* controlled and required us to reach the merits of Thomas's claim, following *Wyatt* would mean his claim fails on the merits anyway. The Court of Appeals explained that, based on authority from our Court, it views challenges to names appearing on the ballot much differently if the challenge is resolved before an election than if the challenge is resolved after the election. *See id.* at 239. It quoted authority from our Court explaining:

> The election commissioners are public officers. In an action against them, **brought before an election**, involving the names of the candidates to be placed on the ballot by them, the statutory provisions referred to are treated as mandatory, and they will be enjoined from placing a name upon the ballot that has not been submitted to them pursuant to the statute, but, after the election commissioners have acted and placed a name upon the ballot, and **after the election**, the provisions of the statute are considered directory only, and the names of candidates will be treated as having been legally placed upon the ballot by the election board, 'unless an essential element of the election is affected, or there is an express declaration in the statute that the act is essential to a valid election, or that its omission will render the election void.'

*Id.* (quoting *Lumm v. Simpson*, 194 N.E. 341, 342 (Ind. 1935)) (emphases added). Because the relevant statute—like the relevant statutes here—did not state that compliance was "essential to a valid election," and because there was no fraud, the defective candidacy form could not invalidate the

election results because that "would contradict the will of the electorate and disenfranchise the voters." *Wyatt*, 936 N.E.2d at 240.

In any event, we don't need to decide whether we would embrace *Wyatt's* analysis or reach the merits of Thomas's claim because we have concluded that his candidacy challenge was not converted to an election contest. And that should be no surprise to Thomas. He previously lodged a similar pre-election challenge to a Republican candidate's eligibility for a Bartholomew County Council seat in 2020, and the trial court there also refused his attempt to treat his pre-election complaint as a post-election contest because "[t]he bringing of a law suit to contest the result of an election is an entirely different legal action than the bringing of a law suit to challenge the eligibility of an elected official to serve." *Schoettmer v. Miller*, Cause No. 03D01-2009-MI-4400, at *3–4 (Bartholomew Super. Ct. Dec. 28, 2020); *see also Pabey v. Pastrick*, 816 N.E.2d 1138, 1143 (Ind. 2004) ("[T]he failure to comply with the requirements of the election contest statutes generally requires dismissal."); *State ex rel. Young v. Noble Cir. Court*, 332 N.E.2d 99, 102 (Ind. 1975) ("It is a familiar principle that one who seeks the benefit of a statutory proceeding must comply with all procedural terms of the statute.").

In sum, Thomas has never identified any provisions in Article 12 or any other statutory basis authorizing the courts to overturn the election based on his challenge—not in his amended complaint, not in his arguments to the trial court, not in his briefing to the Court of Appeals or our Court, nor at oral argument in our Court. And this "Court has long held that statutes providing for contesting elections should be liberally construed in order that the will of the people in the choice of public officers may not be defeated by any merely formal or technical objections." *Pabey*, 816 N.E.2d at 1148 (quotations omitted). Thomas is asking us to do the opposite—to forgive his noncompliance with the statutes governing election contests and set aside the election results based on his claim that the rival political party missed a statutory deadline in its nomination process. Because neither the election code nor our case law permits us to do so, we decline his request.

# Conclusion

For these reasons, we vacate the judgment and remand to the circuit court with the instruction to dismiss Thomas's case as moot.

Rush, C.J., and Massa and Slaughter, JJ., concur.
Goff, J., concurs in part and dissents in part with separate opinion.

APPELLANT PRO SE
Ross G. Thomas
Columbus, Indiana

ATTORNEYS FOR APPELLEE
George Hoffman, III
Brian T. Newcomb
Hoffman & Newcomb
Franklin, Indiana

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEYS FOR *AMICUS CURIAE* ATTORNEY GENERAL OF INDIANA
Theodore E. Rokita
Attorney General of Indiana

James A. Barta
Solicitor General

Jenna M. Lorence
Deputy Solicitor General
Indianapolis, Indiana

ATTORNEY FOR *AMICUS CURIAE* INDIANA DEMOCRATIC PARTY
William R. Groth
Bowman & Vlink, LLC
Indianapolis, Indiana

**Goff, J., concurring in part, dissenting in part.**

In this case involving a Columbus City Council election, I would exercise judicial restraint and deny transfer because intervening amendments to the election code by our General Assembly make the issue here unlikely to reoccur. On the merits, I take no issue with the Court's holding on standing but part ways in the Court's holding that Ross Thomas's claim is moot.

## I. Amendments to the election code after the election make this case inappropriate for transfer.

In this case, the Bartholomew County Republican Party did not have a candidate on the ballot for the 2023 primary election for the Columbus City Council District 6 seat. On June 22, 2023, Joseph Foyst filed a declaration of candidacy, and the Republican Party held a caucus nine days later on Saturday, July 1. But Indiana law requires that a call for a caucus meeting be made no later than ten days before the meeting. *See* Ind. Code § 3-13-1-20(b). The Republican Party then filed their certificate of candidate selection on July 5, missing the statutory deadline on July 3. *See* I.C. § 3-13-1-7(a)(1). Despite there being no exceptions to these deadlines, the clerk's office still accepted the filings. *See* I.C. § 3-13-1-21(b). Ross Thomas, the chair of the Bartholomew County Democratic Party, successfully challenged the nomination. Foyst then filed a second declaration of candidacy pursuant to Indiana Code subsection 3-13-1-7(b)(7) for filling a candidate vacancy due to "[t]he successful challenge of a candidate under section 16.5 and 20.5 of this chapter."

Thomas argues, and the Court of Appeals concluded, that subsection 3-13-1-7(b)(7) only applies when filling a vacancy created due to a successful challenge of a *duly selected* candidate. *Thomas v. Foyst*, 239 N.E.3d 95, 99 (Ind. Ct. App. 2024). Because Foyst missed the filing deadlines, he was never a candidate, and the procedure in subsection 3-13-1-7(b)(7) cannot be used. Otherwise, subsection 3-13-1-7(b)(7) would circumvent the mandatory deadlines in subsections 3-13-1-20(b) and 3-13-1-7(a)(1). The

Republican Party filed a petition to transfer, raising three issues related to whether Foyst is a valid candidate, the primary one being, "when a notice of caucus to fill a ballot vacancy is a day late and a challenge to the candidacy sustained by the county election board, is the party precluded from renaming the same person to fill the vacancy." Pet. to Trans. at 2. The Republican Party asked us to address the issue because it is "an important question of law which has not but which should be decided by this court." *Id.*; *see* Ind. Appellate Rule 57(H)(4).

But between the trial court's denial of Thomas's request and the Court of Appeals' reversal, the General Assembly amended the definition of "candidate" to include a person in Foyst's position. The General Assembly amended the term "candidate" to include "an individual filling a general or municipal election ballot vacancy under IC 3-13-1 or IC 3-13-2" when the required action of the individual was "void or invalid." Pub. L. No. 153-2024, § 1, 2024 Ind. Acts 2459, 2459–60 (codified at I.C. § 3-5-2-6(c)) (effective March 13, 2024). Under this new definition of "candidate," if it had been in effect at the time, the Republican Party could have used subsection 3-13-1-7(b)(7) to re-nominate Foyst and fill the vacancy created when Thomas successfully challenged Foyst's candidacy.

"To protect its 'law-giving function,' this Court has 'authority to select what it will consider from the trial courts or the intermediate court.'" *Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 415 (Ind. 2025) (Goff, J., dissenting) (quoting Randall T. Shepard, *Changing the Constitutional Jurisdiction of the Indiana Supreme Court: Letting a Court of Last Resort Act Like One*, 63 Ind. L.J. 669, 680 (1988)). When determining whether to grant transfer, one of the principal considerations is whether the "Court of Appeals has decided an important question of law" that should be considered by this Court. App. R. 57(H)(4). Because the General Assembly answered the question the parties asked us to answer, and the issue is unlikely to reoccur, I would exercise judicial restraint and deny transfer. Although the Court of Appeals came to the opposite conclusion as the General Assembly, the General Assembly could have applied the statute retroactively to pending cases like Foyst's with a plain statement to that effect but chose not to. *See N.G. v. State*, 148 N.E.3d 971, 976 (Ind. 2020) (Slaughter, J., dissenting) (legislation can provide a "plain statement" for retroactive effect).

## II. Thomas's challenge to Foyst's eligibility is not moot.

The Court opines that, because Thomas brought a pre-election challenge, "his only requested relief was to prohibit Foyst from appearing on the ballot." *Ante*, at 2. But because the election is over, and because Foyst already appeared on the ballot, the Court concludes that "Thomas's request is moot." *Id.*

I disagree.

"[A] case is deemed moot when no effective relief can be rendered to the parties before the court." *Matter of Lawrance*, 579 N.E.2d 32, 37 (Ind. 1991). Here, in his amended complaint, Thomas requested (1) a "declaratory judgment that the Defendant, Joseph Foyst, is *ineligible* to appear as a candidate for Columbus Common Council, District 6, on the 2023 general election ballot" and (2) a "preliminary and permanent injunction" prohibiting Foyst from appearing on the ballot. App. Vol. 2, pp. 84–85 (emphasis added). Thomas withdrew his request for injunctive relief, recognizing that Foyst could not be removed from the ballot after the election occurred. *Id.* at 169. But the issue of Foyst's eligibility to appear as a candidate is still a live issue. In *Wyatt v. Wheeler*, the winner of a primary election argued that a pre-election challenge to her eligibility was moot. 936 N.E.2d 232, 237 (Ind. Ct. App. 2010). The Court of Appeals disagreed, concluding that a challenge to eligibility in the primary election was implicitly also a challenge to eligibility for the general election. *Id.* And here, Thomas's pre-election challenge to Foyst's eligibility to appear as a candidate is still a live challenge to his nomination, even after the election. This Court could provide Thomas effective relief by declaring Foyst's candidacy invalid. *See Higgins v. Hale*, 476 N.E.2d 95, 100 (Ind. 1985) (declaring after an election that a nomination that was not made within the deadline period was "void and of no effect").

Nor do I think Thomas was required to initiate a post-election challenge when he had an ongoing pre-election challenge. Title 3 of the Indiana Code provides for both pre-election and post-election challenges. Thomas initiated a pre-election challenge, but the Court concludes he

should have filed another challenge after the election was over under Indiana Code subsection 3-12-8-6(a)(3)(A). *Ante*, at 13. In *Higgins*, the petitioner raised a pre-election challenge and, after the election occurred, the Court concluded the nomination was "void and of no effect." 476 N.E.2d at 100; *see also Wilhite v. Mohr*, 485 N.E.2d 131, 132 (Ind. Ct. App. 1985) (reaching the same conclusion). The Court concludes here that "*Higgins* doesn't help Thomas because the legislature has since overhauled the election code." *Ante*, at 15. But while no statute expressly "allows a possible revival of Thomas's pre-election challenge," *id.* at 14, nothing in the election code says a pending action to determine whether the individual was properly on the ballot in the first place cannot continue beyond election day. And before the amendment to code section 3-5-2-6 (redefining a "candidate" to include a person seeking to fill a vacancy after his candidacy was declared void), there's nothing to suggest that the General Assembly abrogated the rule in *Higgins*. *See Miami Cnty. Bd. of Comm'rs. v. US Specialty Ins. Co.*, 158 N.E.3d 415, 420 (Ind. Ct. App. 2020) (concluding that a statute abrogates common law when it declares so "either in express terms or by unmistakable implication"), *trans. denied*.

Instead, requiring litigants to reinitiate their challenges after an election would discourage litigants from raising their known claims earlier, lead to judicial inefficiency, and encourage delay from the candidate being challenged. Although Thomas could have waited for the results of the election and then challenged Foyst's nomination afterward under section 3-12-8-6, our law "strongly disfavors" post-election challenges. *See Allsup v. Swalls-Thompson*, 169 N.E.3d 1128, 1142 (Ind. Ct. App. 2021) (quoting *White v. Ind. Democratic Party ex rel. Parker*, 963 N.E.2d 481, 486 (Ind. 2012)), *trans. denied*. Had the pre-election challenge been resolved before the election, this could have avoided potential "post-hoc disenfranchisement of voters." *See Kite v. Curlin*, 139 N.E.3d 1113, 1123 (Ind. Ct. App. 2019), *trans. denied*. But requiring litigants to initiate another challenge after an election discourages them from bringing known pre-election challenges in the first place.